No. 47,882

MARIANNE E. VESPA, *Appellant*, v. SAFETY FEDERAL SAVINGS & LOAN ASSOCIATION, *Appellee*.

(549 P. 2d 878)

Opinion filed May 8, 1976.

*William D. Hamblin*, of Overland Park, argued the cause, and *Thomas W. Brooks*, also of Overland Park, was with him on the brief for the appellant.

*Gerald E. Williams*, of Breyfogle, Gardner, Martin, Davis & Kreamer, of Olathe, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is an action for damages based upon claims of invasion of privacy. After discovery was completed, the trial court sustained defendant's motion for summary judgment, and plaintiff appeals.

Plaintiff bases her claim upon three incidents. The first is an unannounced visit to her home by John E. Wiggins, a vice president of the defendant, Safety Federal. The second is a demand by Safety Federal, corrected within a few days, for some twelve hundred dollars more than was due in payment of its loan. The third is the release of information by Wiggins to a realtor concerning the judgment and the redemption period fixed in a foreclosure action brought by Safety Federal against Mrs. Vespa.

The record discloses these facts. Plaintiff and her then husband, William Vespa, purchased a residence in the Oak Park subdivision in Johnson County, Kansas, from the J. C. Nichols Company in 1970. The Vespas gave a first mortgage on the property to J. C. Nichols who assigned the note and mortgage to Safety Federal. The loan became delinquent in July, 1971. Safety Federal commenced foreclosure proceedings on April 28, 1972, and on September 19, 1972, obtained a decree of foreclosure in the district court of Johnson County, Kansas. Shortly thereafter plaintiff and her husband were divorced. The decree of divorce awarded the realty to plaintiff.

An order of sale issued out of the foreclosure proceedings, and on October 26, 1972, the sheriff sold the property to Safety Federal, and a certificate of purchase issued to it. Plaintiff was granted six months redemption, which period expired on April 26, 1973.

Plaintiff made written application for a loan to Plaza Savings and Loan Association on April 3, 1973. This application was approved April 10, 1973. Meanwhile, and on April 5, 1973, Mr. Wiggins called upon plaintiff at her residence. He identified himself, presented his business card, entered the home and sat down in the chair off of the hallway. Plaintiff states that she did not invite him to enter, but she did not ask him to leave because she was interested in finding out why he was there and what he had to say. Wiggins stated that he called at the home to find out if the property was going to be redeemed, and if not then whether repairs would be necessary to make the house marketable. According to plaintiff, Wiggins asked her what she was going to do as she had to be out of the house pretty soon. He inquired about her divorce and whether there was a chance of reconciliation. He told her that this was the first foreclosure in Oak Park, and that "made her feel like dirt." She told him of her application to Plaza Savings, and he commented that she was two years behind in her payments; that obtaining credit would be difficult after foreclosure; and that there was no way in which she could get a new loan or sell the house in such a short period of time. He said that he was looking for a home for his elderly parents, and she should consider selling the house to him. A realtor called Mrs. Vespa while Wiggins was there, and inquired about selling the home. Wiggins had previously had a conversation with the realtor, in which he had disclosed the mortgage foreclosure and the redemption period, and the realtor called to see if the home might be for sale. The phone call upset Mrs. Vespa.

Mr. Vespa arrived about midway through the Wiggins' visit. Mr. Vespa had an automobile stored in the attached garage. He showed this car to Wiggins and offered to sell it to him. Wiggins viewed the car in the garage and returned on a later date to give it a test drive. Mr. Wiggins was not, at any time, requested to leave the home. His visit on April 5 lasted approximately three hours.

Plaza Savings and Loan approved plaintiff's loan application on April 10, 1973. One of its officers then contacted Mathew Grant, Jr., an employee of Safety Federal, to ascertain the amount required to redeem the property. Mr. Grant, by letter April 12, 1973, ad-

vised Plaza Savings that the redemption amount would be $37,-410.80. Mr. Grant erroneously included attorneys' fees in the amount, but upon discovering that they were not recoverable in a Kansas foreclosure, corrected the amount and wrote a second letter dated April 20, 1973, which fixed the amount at $36,202.91. The plaintiff redeemed the home for that figure, and she does not challenge its correctness. In her deposition, plaintiff conceded that she had no evidence to support her claim that the issuance of the incorrect settlement figure was deliberate, malicious, or done with intent to deceive or defraud, and she acknowledged that she redeemed her property for the correct amount and incurred no loss of money and no loss of her redemption rights.

Some of the statements attributed to Mr. Wiggins were controverted or explained by him in his testimony; however, we have stated and we consider only the evidence most favorable to the plaintiff.

Plaintiff contends that it was error for the court "to weigh conflicting deposition testimony and interrogatory answers and resolve such conflicting evidence against the plaintiff, and to order summary judgment that conflicted with the deposition testimony and interrogatory answers" and plaintiff claims that it was error for the court to find as a matter of law that plaintiff's first amended petition, with supporting deposition testimony and interrogatory answers, did not support a cause of action triable by a jury.

Plaintiff does not argue these matters separately, but presents a single and rather rambling argument. Plaintiff contends that there are genuine issues of material fact; that the court weighed conflicting evidence and resolved the conflict adversely to plaintiff, and that the evidence clearly shows that there was an invasion of plaintiff's privacy. The sole issue on this appeal, as we see it, is whether or not the court's ruling granting the motion for summary judgment was proper.

Plaintiff does not point to anything in the record indicating that the court weighed conflicting testimony, and we are unable to find any indication that the court did so. There is little conflict in the evidence, and certainly the court did not specifically rule on the evidence. The court made no specific findings, but simply sustained the defendant's motion for summary judgment.

Likewise, the plaintiff does not go beyond a flat statement that genuine issues of fact existed. There does not appear to be any

serious conflict in the evidence and we are unable to discern any genuine issues of fact which remain for trial.

Certainly there was no dispute concerning the circumstances surrounding Safety Federal's issuance of the letter to Plaza Savings and Loan requesting a greater amount than was actually due. A subsequent letter, correcting the amount, was issued promptly. Plaintiff conceded, during her deposition testimony, that she had no evidence to support her claim that the issuance of the incorrect letter was deliberate, malicious, or done with intent to deceive or defraud. She acknowledged that she had redeemed the property for the correct amount and that she incurred no financial loss and no loss of her redemption rights.

The foreclosure action brought by Safety Federal against the Vespas in the district court of Johnson County, Kansas was a matter of public record. The orders of the court therein decreeing foreclosure, ordering a sale and fixing the redemption rights of the owners were a part of that public record. A discussion of those matters between Wiggins and a realtor invades no right of privacy of the plaintiff, and cannot be the basis for her claim against Safety Federal.

Turning to the Wiggins' visit, the primary dispute in the evidence is whether plaintiff invited Wiggins into her home or whether he entered without her specific permission. This appears to be a hollow question, a distinction without a difference.

There is no claim that Wiggins forced his way into the home or that he entered over plaintiff's objection. He knocked at the door and plaintiff opened it. He introduced himself and presented his business card. He came in and sat down. He carried on a conversation with the plaintiff for about three hours. Plaintiff never asked him to leave; she stated that she "wanted to find out why he was there." While it is possible that Wiggins was brusque, and perhaps somewhat insensitive, the evidence does not disclose that his conduct was other than businesslike. There is nothing in the record to indicate that he was loud, insulting, contemptuous, vulgar, or offensive in manner or speech.

We have discussed invasion of privacy in the recent cases of *Froelich v. Adair*, 213 Kan. 357, 516 P. 2d 993 and *Dotson v. McLaughlin*, 216 Kan. 201, 531 P. 2d 1. In the *Dotson* case, we said:

"The right of privacy is invaded when there is (*a*) unreasonable intrusion upon the seclusion of another; or (*b*) appropriation of the other's name or likeness; or (*c*) unreasonable publicity given to the other's private life; or (*d*)

publicity which unreasonably places the other in a false light before the public. . . ." (Syl. ¶ 1.)

The only one of these applicable here is the first, and thus the question is whether or not the evidence here, viewed in a light most favorable to the plaintiff, demonstrates an unreasonable intrusion upon the seclusion of the plaintiff. The Restatement of the Law, Second, Torts § 652B cited in *Dotson*, is enlightening. It states:

" 'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable man.' " (p. 207.)

There is no indication here that Wiggins forced his way into the home or insisted upon entry in the face of any objection or refusal by the plaintiff. There is nothing in the record to indicate conduct which would be highly offensive to the reasonable man. As we observed in *Johnson v. Boeing Airplane Co.*, 175 Kan. 275, 262 P. 2d 808:

" 'The right of privacy, like other rights that rest in an individual, may be waived by him. A waiver or relinquishment of this right, or of some aspect thereof, may be implied from the conduct of the parties and the surrounding circumstances.' " (Syl. ¶ 3.)

Here, the plaintiff did not refuse Wiggins permission to enter when he appeared at her home. She and her former husband visited with Wiggins for some three hours. Never was Wiggins asked to leave. To the contrary, he was shown an automobile in the garage and was urged to return and test drive the vehicle on a later date. He did so, and plaintiff voices no objection to the second visit. Under the circumstances we conclude that the evidence, viewed in the light most favorable to the plaintiff, fails to disclose any actionable invasion of plaintiff's privacy.

Upon oral argument plaintiff claimed that the conduct of Wiggins also constituted the tort of "outrage." In *Dawson v. Associates Financial Services Co.*, 215 Kan. 814, 529 P. 2d 104, this court adopted the rule of Restatement of the Law, Second, Torts § 46 (1), which states:

" 'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.' (p. 71.)" (p. 820.)

Suffice it to say that the conduct here disclosed falls far short of

the extremely abusive acts encompassed within that section. The conduct of Wiggins was not sufficiently extreme or outrageous to justify liability to the plaintiff on the theory of "outrage." We conclude that the trial court's ruling sustaining the defendant's motion for summary judgment was proper.

The judgment is affirmed.