(563 P.2d 511)

No. 48,321

RODNEY BRADSHAW, *Appellant*, v. DANIEL L. SWAGERTY, *Appellee*.

Opinion filed April 15, 1977.

*B. A. Lightfoot*, of Jetmore, for the appellant.

*B. G. (Skip) Larson* and *Max Eugene Estes*, of Williams, Larson, Voss, Strobel and Estes, of Dodge City, for the appellee.

Before REES, P.J., FOTH and SWINEHART, JJ.

FOTH, J.: Plaintiff Rodney Bradshaw brought this action for slander and outrage, with both counts arising out of a single verbal encounter with the defendant, Daniel L. Swagerty. On the basis of depositions and answers to interrogatories the trial court

rendered summary judgment for the defendant, and plaintiff has appealed. There is no claim that discovery was not complete. The question, therefore, is whether, taking plaintiff's evidence in the light most favorable to him, he had a submissible case under either of his theories.

The defendant is a lawyer who, in March, 1975, was retained by the Southwest Grain company to collect accounts allegedly owed by plaintiff and his brother Paul. Defendant was also Hodgeman county attorney. On March 19 plaintiff appeared at defendant's office in response to a collection letter inviting a discussion of the accounts. Plaintiff asserted the defense of infancy, and threatened countersuit if sued. He also helped himself to candy from a dish in defendant's office, much to defendant's irritation. The discussion grew heated, and descended to the name-calling which forms the basis of plaintiff's suit.

At some point during the discussion plaintiff's brother Paul appeared. Although Paul apparently took no active part in the encounter, it was to him that the allegedly slanderous words were first published. According to plaintiff's deposition, in the course of the argument defendant at one time or another called him a "nigger" and a "bastard." Plaintiff is a young black man, of concededly legitimate birth. (The term "knot-headed boy" was also pleaded, but its use does not appear in the depositions.)

Defendant admitted using the term "bastard," but denied that he "directly" called plaintiff a "nigger." In any event, when the two brothers refused to leave defendant summoned a deputy sheriff, who escorted them out. The deputy returned to defendant's office and asked what had happened. Defendant's recounting of the events resulted in the second publication of the alleged slander.

Do the terms used (assuming all of them were) constitute actionable slander? We note first that plaintiff pleaded only that he had suffered "humiliation, embarrassment and loss of reputation." He testified that "the incident in the defendant's office had not affected his employment, but had affected his relations with others in the community." Thus he neither pleaded nor offered to prove special damages. Barring special damages plaintiff has no cause of action for slander unless the words spoken are slanderous *per se. Bennett v. Seimiller,* 175 Kan. 764, 267 P. 2d 926.

At common law slander *per se* was limited to four categories: imputation of a crime; imputation of a loathsome disease; words reflecting on plaintiff's fitness for his office, profession or trade; and the imputation of unchastity in a woman. Prosser, Law of Torts (4th ed.), pp. 754-760; 50 Am. Jur. 2d, Libel and Slander, sec. 10; 53 C. J. S., Libel and Slander, sec. 14. And *cf.*, Restatement (Second), Torts, sec. 569 (Tent. Draft No. 11).

No single Kansas case has adopted the common law categories *in toto,* but each of the four has been recognized: *Sweaney v. United Loan & Finance Co.*, 205 Kan. 66, 468 P. 2d 124 (imputation of a felony); *Bennett v. Seimiller,* supra (criminal offense, loathsome disease, prejudice to trade or business); *Munsell v. Ideal Food Stores*, 208 Kan. 909, 494 P. 2d 1063 (unfitness for employment); *Cooper v. Seaverns*, 81 Kan. 267, 105 Pac. 509 (unchastity).

Plaintiff offers no authority from this jurisdiction or any other holding the epithets in question here to be slanderous *per se.* The annotation appearing at 53 A. L. R. 548 indicates that an imputation of bastardy or illegitimacy is generally held not slanderous *per se,* although it might be actionable where it affected property rights acquired through inheritance. As to the closely allied epithet "son of a bitch," Connecticut's highest court, after finding that a charge of police brutality was not actionable, went on to say:

"Other words uttered in the presence of those assembled, 'clown,' 'big fat ape,' 'smart aleck,' 'big fat oaf,' and 'stupid son of a bitch,' were here merely gross and vulgar expressions of abuse. The general rule has long been that such words of general abuse, regardless of how rude, uncouth or vexatious are not slanderous per se and cannot support recovery in a slander action in the absence of a showing of special damages. Notes, 13 A. L. R. 3d 1286, 1290, 37 A. L. R. 883, 885." (*Moriarty v. Lippe,* 162 Conn. 371, 385, 294 A. 2d 326 [1972].)

See, also, *Sampson v. Rumsey,* 1 Kan. App. 2d 191, 563 P.2d 506.

The term "nigger" is one of insult, abuse and belittlement harking back to slavery days. Its use is resented, and rightly so. It nevertheless is not within any category recognized as slanderous *per se.* "Knot-headed boy," if that expression was used, can only be construed to be the same type of general verbal abuse.

We hold that none of the alleged terms was slanderous *per se.* Since there was no plea or evidence of special damages, the trial

court correctly entered its summary judgment for defendant on this count.

The remaining issue is whether the facts may be construed to make out the tort of "outrage." Kansas has adopted the Restatement rule:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." (Restatement [Second], Torts, sec. 46, p. 71.)

See, *Vespa v. Safety Fed. Savings & Loan Ass'n*, 219 Kan. 578, 549 P. 2d 878; *Dotson v. McLaughlin*, 216 Kan. 201, 531 P. 2d 1; *Dawson v. Associates Financial Services Co.*, 215 Kan. 814, 529 P. 2d 104.

In *Dotson* the court noted that liability attaches only to extreme and outrageous conduct, and quoted with approval from the Restatement notes:

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam." (216 Kan. at 210.)

It is for the court in the first instance to determine whether the defendant's conduct was so outrageous as to permit recovery. *Dotson v. McLaughlin*, supra. It appears to us that the trial court was fully justified in regarding the epithets complained of here as "mere insults" of the kind which must be tolerated in our rough-edged society. Summary judgment for the defendant was therefore proper on the "outrage" count as well as the slander count.

Affirmed.