No. 56,885

RICK NEUFELDT and LORI NEUFELDT, *Appellees*, v. L. R. FOY CONSTRUCTION CO., INC., *Appellant*.

(693 P.2d 1194)

Opinion filed January 26, 1985.

*Tim R. Karstetter*, of Flory, Karstetter, Flory & Klenda, of McPherson, argued the cause and was on the brief for appellees.

*Eric B. Metz*, of Martin, Pringle, Oliver, Triplett & Wallace, of Wichita, argued the cause, and *William L. Mitchell*, of Mitchell & Henry, of Hutchinson, and *Kent G. Voth*, of Schmidt & Langley, Chartered, of Hutchinson, were with him on the briefs for appellant.

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal from a jury verdict awarding plaintiffs the aggregate sum of $350,000 predicated upon the tort of outrage.

Plaintiffs in this action are husband and wife. Rick Neufeldt is the owner of a small company known as J & R Earthmoving,

operating out of Inman. Lori Neufeldt does the bookkeeping for her husband's company. Defendant Foy Construction Co., Inc., was the prime contractor on the Sylvan Grove sanitary sewer project. The dirt work portion of the Sylvan Grove project was subcontracted to J & R Earthmoving. The same contractual arrangement between the parties existed as to another construction job, known as the Ulysses project. Foy's superintendent in charge of both projects was Dennis Lyne, and Lyne was Rick Neufeldt's primary contact with Foy Construction. The relationship between Lyne and Rick Neufeldt was hostile.

During the summer of 1982, while work was being performed on the Sylvan Grove subcontract, Choitz Oil Company sold fuel to Neufeldt for use on the project. The check given Choitz by Neufeldt was returned for insufficient funds. Choitz called Dennis Lyne, as agent for the prime contractor, regarding the bad check.

Duane Huehl was employed by Neufeldt as a finish blade operator on the Sylvan Grove project. On September 2, 1982, Huehl telephoned Lyne relative to an insufficient fund payroll check given him by Neufeldt. Huehl wanted Lyne's assistance in collecting the check. Lyne suggested Huehl contact the county attorney's office. Lyne, as project superintendent for Foy, had an interest in getting the bad check made good by subcontractor Neufeldt as the situation, unremedied, could delay Foy's receipt of final payment for the project.

On September 2, 1982, after receiving the Huehl call, Lyne telephoned Neufeldt's business number. Lori Neufeldt answered the telephone. Lyne asked to speak to Rick Neufeldt and was advised he was not there. It is agreed that Lyne's voice and manner were polite during the conversation. The content of Lyne's message is disputed. Lyne testified he advised her of the Huehl bad check and that the matter would be turned over to the county attorney. Lori Neufeldt testified that Lyne said the sheriff "was coming to get Rick" over the bad check. For purposes of this appeal we will consider the Neufeldt version as true.

Lori Neufeldt started driving around looking for her husband. When she found him, Lori Neufeldt was crying and nervous. Rick Neufeldt continued to perform his work, but took back roads to avoid the sheriff. On September 10, 1982, the Huehl

debt was paid by a cashier's check. In the interim, neither of the Neufeldts made any effort to contact the sheriff.

Lori Neufeldt had suffered a miscarriage 90 days prior to the September 2, 1982, telephone call, and Lyne was aware of this fact. After the telephone call Lori Neufeldt was nervous and suffered from insomnia. Neither Neufeldt incurred any medical bills as a result of the incident.

The Neufeldts brought this action seeking damages occasioned by the Lyne telephone call, predicated upon the tort of outrage. The jury awarded each plaintiff $25,000 actual damages and $150,000 punitive damages for an aggregate award of $350,000. Foy appeals therefrom.

Before proceeding to the issues raised by appellant, we shall first consider the Neufeldts' contentions that the appeal should be dismissed.

Following the trial herein, Foy timely filed a motion for a new trial. The motion was heard on March 9, 1984. At the conclusion of the hearing, the trial court announced the motion was denied and directed the Neufeldts' attorney to prepare a journal entry in accordance therewith. The journal entry was filed on March 22, 1984. On April 12, 1984, Foy filed its notice of appeal.

The Neufeldts contend the 30-day period for filing a notice of appeal (K.S.A. 60-2103[a]) commenced to run on March 9, 1984, the day the court ruled from the bench that the new trial motion was denied, rather than on March 22, 1984, the date the journal entry was filed.

K.S.A. 60-2103(a) provides, in pertinent part:

"When an appeal is permitted by law from a district court to an appellate court, the time within which an appeal may be taken shall be thirty (30) days from the entry of the judgment, *as provided by K.S.A. 60-258* . . . . The running of the time for appeal is terminated by a timely motion made pursuant to any of the rules hereinafter enumerated, and *the full time for appeal fixed in this subsection commences to run and is to be computed from the entry of any of the following orders* made upon a timely motion under such rules: . . . or denying a motion for new trial under K.S.A. 60-259." (Emphasis supplied.)

K.S.A. 60-258 provides, *inter alia*:

"*No judgment shall be effective unless and until a journal entry* or judgment form *is signed* by the trial judge and *filed with the clerk of the court*." (Emphasis supplied.)

By the clear and unambiguous language of K.S.A. 60-2103(a)

and 60-258, the appeal was timely filed. The Neufeldts also seek dismissal of the appeal on the technical ground the notice of request for a transcript was not timely filed (Rule 3.03 [232 Kan. cv]).

We have carefully considered all points on which dismissal of the appeal is sought and find them to be without merit.

We turn now to the points raised by Foy on appeal. A number of issues go to the sufficiency of the evidence establishing the tort of outrage. In *Roberts v. Saylor*, 230 Kan. 289, 637 P.2d 1175 (1981), the nature of and requisites for establishing the tort of outrage were discussed in detail. It is worthwhile to quote rather extensively from *Roberts*, as follows:

"[A] cause of action has emerged in Kansas for the intentional infliction of mental distress. No bodily harm to the plaintiff is required to support such an action. One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. *Dawson v. Associates Financial Services Co.*, 215 Kan. [814, 822, 529 P.2d 104 (1974)]; *Dotson v. McLaughlin*, 216 Kan. [201, 209, 531 P.2d 1 (1975)]. Proof of four elements is required to establish the cause of action: (1) The conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe.

"Liability for extreme emotional distress has two threshold requirements which must be met and which the court must, in the first instance, determine: (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it. *Bradshaw v. Swagerty*, 1 Kan. App.2d [213, 216, 563 P.2d 511 (1977)]; *Dotson v. McLaughlin*, 216 Kan. at 211; *Dawson v. Associates Financial Services Co.*, 215 Kan. at 824; Restatement (Second) of Torts § 46(1), comments *h* and *j* (1965).

". . . So what is the test of this necessary extreme and outrageous conduct? In *Dotson v. McLaughlin*, 216 Kan. at 210, Mr. Justice Prager speaking for the court adopted guidelines from the Restatement of Torts. It was pointed out that recovery must depend on the facts and circumstances of each case but liability may be found only in those cases where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. It was further said that liability may be found to exist generally in a case when the recitation of facts to an average citizen would arouse resentment against the actor, and lead that citizen to spontaneously exclaim, 'Outrageous!'

"It should be understood that liability does not arise from mere insults, indignities, threats, annoyances, petty expressions, or other trivialities. Members of the public are necessarily expected and required to be hardened to a certain amount of criticism, rough language and to occasional acts and words that are

definitely inconsiderate and unkind. . . . Conduct to be a sufficient basis for an action to recover for emotional distress must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society.

"The second threshold requirement which must be met and which the court must first determine as present is that the plaintiff's emotional distress is sufficiently severe, genuine and extreme that no reasonable person should be expected to endure it.

. . . .

"The extreme distress required must be reasonable and justified under the circumstances, and there can be no liability where the plaintiff has appeared to suffer exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor had knowledge. *Dawson v. Associates Financial Services Co.*, 215 Kan. at 820; Restatement (Second) of Torts § 46(1), comment *f*. The emotional distress must in fact exist, and it must be severe. Prosser, Law of Torts (4th ed. 1971) at 59.

"In the first instance the court must determine if these threshold requirements have been met. If the court determines from the pleadings, stipulations, admissions, and deposition of the plaintiff that reasonable fact finders might differ as to whether defendant's conduct was sufficiently extreme and outrageous as to subject him to liability for emotional distress, and if the court further determines plaintiff's emotional distress was such that reasonable fact finders might differ as to whether plaintiff's emotional distress was genuine and so severe and extreme as to result in liability, then and only then, it must be left to the jury to determine liability based on the evidence at trial. *Dawson v. Associates Financial Services Co.*, 215 Kan. at 824; *Dotson v. McLaughlin*, 216 Kan. at 211; *Bradshaw v. Swagerty*, 1 Kan. App. 2d at 216; Restatement (Second) of Torts § 46(1), comments *h* and *j*." 230 Kan. at 292 — 94.

The *Roberts* rationale has been applied in *W-V Enterprises, Inc. v. Federal Savings & Loan Ins. Corp.*, 234 Kan. 354, 673 P.2d 1112 (1983), and *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 662 P.2d 1214 (1983).

Was Dennis Lyne's conduct sufficiently extreme and outrageous as to subject his employer to liability for emotional distress?

Lyne had a legitimate interest in Neufeldt's making the insufficient fund check good. He was trying to contact Neufeldt about the check and telephoned the man's business number. Lori Neufeldt answered the telephone and, as the company bookkeeper, presumably had knowledge of or an interest in the company's bad check. This is considerably different than calling an individual's residence to hassle a family member over a business problem. Lyne knew Lori Neufeldt had suffered a miscarriage some 90 days previously but this bare fact is not the equivalent of maliciously and intentionally giving a disturbing

message to a critically ill or mentally unbalanced person. Lyne was not abusive during the conversation. Lyne falsely advised Lori Neufeldt the legal process concerning the bad check matter had reached the point of arrest when, in fact, Lyne had only suggested the check holder contact the county attorney.

Conduct, to be a sufficient basis for an action to recover for emotional distress, must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society. *Roberts v. Saylor*, 230 Kan. at 293. We conclude the evidence herein, when viewed in the light most favorable to the plaintiffs, constitutes an insufficient basis for recovery predicated upon the tort of outrage. We base our decision upon the rationale expressed in *Roberts v. Saylor*.

By virtue of this conclusion, other issues raised need not be addressed.

The judgment is reversed.

LOCKETT, J., concurring in part and dissenting in part. I concur with the majority that the appeal was timely filed. I dissent from the majority's determination that there was insufficient evidence to find the defendant had committed the tort of outrage.

We all know that the court makes law. In fact, the tort of outrage was created by this court, not the legislature. We engaged in the common law tradition of creating a law to fit the needs and demands of our changing society.

When creating new law, we rely on judicial precedent, principles, standards, doctrines and tradition from our own and various other jurisdictions. Relying on such, we announced that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress.

Once the new tort was created, this court awaited the return of the progeny from the trial courts. When the descendant returned, we were then required to apply the rules of appellate review to that case and determine whether or not under the law and facts the case was properly tried and submitted to the jury by the trial court.

Here the jury was instructed that it should consider whether the defendant was liable to the plaintiff by determining if the conduct of the defendant:

1. was extreme and outrageous;

2. was intentionally or recklessly inflicted upon the plaintiff;

3. caused severe emotional distress to the plaintiff.

To be extreme and outrageous, the conduct complained of must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. If a recitation of the facts to an average member of the community would arouse his resentment against the actor, then he should find defendant's conduct to have been extreme and outrageous. Applying the law to the facts, the jury determined the defendant's actions were outrageous.

The appellant claims that there was insufficient evidence for the jury to find it guilty of the tort of outrage. Under the scope of appellate review, when a jury verdict is attacked for insufficiency of the evidence, it is the appellate court's duty to search the record and determine whether there is substantial competent evidence to support the verdict.

The majority correctly determined that Lyne had a legitimate interest in Neufeldt's making the insufficient fund check good. The majority then determined that Lyne's commission of a criminal offense in an effort to force Neufeldt to pay the insufficient fund check was not outrageous.

Lyne violated K.S.A. 21-4113(1)(b) when he telephoned Neufeldt's business number to falsely advise that the sheriff had an arrest warrant due to the issuance of an insufficient fund check and was in the process of locating Neufeldt to arrest him. Lyne's intent was to force Neufeldt to pay a creditor. If a crime had been committed by Neufeldt when he passed the check, Lyne cared not a whit. Lyne had no intention of informing the sheriff a possible crime had been committed. He was willing to hide that fact from the sheriff if Neufeldt would pay off the check.

Was Lyne's conduct outrageous? Our legislature has stated that one may not willfully do certain acts that are prohibited because they are injurious to society. When one intentionally violates the criminal law in an effort to force another to do an act in order that he or his employer may profit, that conduct is outrageous.

The jury found Lyne's acts to be outrageous. The majority reweighed the facts, found them insufficient, and determined

such conduct is not outrageous, thereby denying the victims compensation for damages the jury determined they had sustained. I disagree.