Hiram W. WRIGHT, Plaintiff,

v.

MONTGOMERY WARD &
CO., INC., Defendant.

Civ. A. No. 91–4241–DES.

United States District Court,
D. Kansas.

Feb. 5, 1993.

Lynn D. Lauver, Dwight L. Miller, Topeka, KS, for plaintiff.

Grant M. Glenn, Woner, Glenn, Reeder, Lowry & Girard, Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on motion by the defendant Montgomery Ward & Co., Inc. ("Montgomery Ward") for summary judgment. The plaintiff Hiram Wright is suing Montgomery Ward on several legal theories. He alleges false imprisonment, intentional infliction of emotional distress, malicious prosecution and violation of his civil rights, 42 U.S.C. § 1983. The court finds

that even taking the plaintiff's facts as true and uncontroverted, the defendant is entitled to judgment as a matter of law and Montgomery Ward's motion for summary judgment (Doc. 62) will be granted.

The plaintiff's claims are based upon an incident occurring July 29, 1990, in which Glenn Hawks, a loss prevention specialist for Montgomery Ward, reported that merchandise presented to the plaintiff for payment was not properly rung up. The plaintiff was a cashier for Montgomery Ward and the customer was Bridgette Criglar, the wife of another Montgomery Ward employee. The total for all purchases was $1.05, but the value of merchandise found in Ms. Criglar's package was over $50.

The police were called to the scene, Glenn Hawks's statement was taken and subsequent theft charges were filed against both the plaintiff and Ms. Criglar. The plaintiff was interviewed by store officials on July 29, 1990, for over one and one-half hours and was arrested on September 9, 1990. The plaintiff was eventually acquitted.

■ A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

## FALSE IMPRISONMENT

■ The plaintiff asserts his false imprisonment claim as to two separate events. First, he alleges the interview conducted on July 29, 1990, amounted to false imprisonment. Specifically, the plaintiff contends the interview lasted over one and one-half hours, the tone was hostile and accusatory, he believed he would be arrested if he tried to leave and he was summoned to the interview under pretext. The defendant contends the plaintiff consented to the interview, and, even if he had not, the merchant's defense, K.S.A. § 21–3424, would shield Montgomery Ward from liability for false imprisonment.

The court finds that even taking all the plaintiff's allegations as true, the plaintiff has not demonstrated any genuine issue of material fact. Taking as true for the purpose of this motion, the plaintiff states he came to the interview having been led to believe the loss prevention employee, Glenn Hawks, was going to question him about matters unrelated to the incident with Bridgette Criglar or a credit card transaction scheme. He signed a consent form not knowing he was the subject of the inquiry. The plaintiff also states he was told, after requesting to leave, that it would look bad for him if he left.

The plaintiff stated the following in his deposition:

Q Did you try to leave the interview at any time?

A No. I think I cooperated fully with them.

Q They didn't restrain you or threaten you?

A I didn't think I could leave until I clarified my position or tried to clear up some kind of misunderstanding, because now my character and my name is involved and I didn't think I would be able to leave without being implicated as being guilty because I left the interview. I felt like I had to stay.

Q You were trying to cooperate to clear your name?

A Yes.

Q But at no time did they threaten you if you left they were going to do so and so?

A No.

Q And at no time did they restrain you to prevent you from physically leaving?

A Personally I felt like I couldn't leave. Now what kind of definition you want to put on it, I just felt like I just couldn't leave. I thought I would be charged and maybe arrested right then, that is how I felt. Physically no restraint was put on me, but mentally it was because I felt like if I didn't clear this matter up or clear my name that I could be charged right there on the spot with some kind of improprieties that I wasn't aware that I was a part of.

 The Kansas Supreme Court has held that "all that is necessary is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which the one being restrained fears to disregard. It is universally held the action of false imprisonment always includes the element of an assault in the technical sense." *Thompson v. General Finance Co.,* 205 Kan. 76, 468 P.2d 269, 280 (1970). Further, it is recognized that a person must be held against their will. "[I]f one agrees of one's own free choice to surrender freedom of motion, as by remaining in a room or accompanying another voluntarily, to clear oneself of suspicion or to accommodate the desires of the other, rather than yielding to the constraint of a threat, then there is no imprisonment." W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 11, at 49 (5th ed. 1984) (and cases cited therein). Further, there can be no liability for threats for the future, such as to call the authorities or have the plaintiff arrested. *Id.*

at 50. This amounts to moral pressure and not any unlawful restraint.

By the plaintiff's own admission, the reason he felt constrained to remain in the interview was the desire to clear his name. He was afraid if he left he might be charged with a crime or even arrested. The plaintiff admits there were no threats other than it might look bad for him if he left. As a matter of law, the court finds this is not sufficient to make a submissible case of false imprisonment and judgment must be granted to the defendant on this claim as to the July 29, 1990, interview. Based upon the court's resolution of this issue, the defendant's affirmative defenses of consent and/or the merchant's defense need not be analyzed.

 The plaintiff further alleges false imprisonment for the September 9, 1990, arrest at his residence. The plaintiff was arrested by the Shawnee County Sheriff's Department.

 The law is settled that the arrest does not have to be directly ordered by the defendant but "it must appear that they either instigated it, assisted in the arrest, or by some means directed, countenanced or encouraged it." *Thompson v. General Finance Co.,* 205 Kan. 76, 468 P.2d 269, 280. In *Thompson,* the defendant filed an affidavit for extradition of the defendant from Colorado that contained numerous inaccuracies. For example, the affidavit stated the defendant had personal knowledge that the defendant was in Kansas on a certain date and committed the alleged offense on that date. The record was clear the plaintiff was not in Kansas on that date. *Id.* The court found that by not making a full and truthful disclosure of facts to the county attorney, the defendant instigated, countenanced or assisted the arrest. *Id.*

On the other hand, the Kansas Supreme Court has held that the defendant cannot be liable for false arrest by turning over to the authorities its knowledge of a suspected offense where the officer then makes an arrest on the officer's own judgment and discretion. *Thurman v. Cundiff,* 2 Kan.App.2d 406, 580 P.2d 893, 898 (1978).

The question for the court for the purpose of this motion is whether the facts in dispute are material and preclude summary judgment for the defendant. The plaintiff contends the defendant made false statements and failed to disclose Darren Criglar's role in the transaction in question, which amounted to Montgomery Ward instigating the plaintiff's arrest. There is no question that the accuracy of loss prevention specialist Glenn Hawks's statement to the police is in dispute.

The court, however, cannot find that Montgomery Ward is subject to liability on these facts. Even if the report made to Topeka police contained inaccuracies, Montgomery Ward did not swear out a complaint, did not submit an affidavit, and, after the initial call about the suspected crime, did not have any further role in whether charges would be filed. In fact, the plaintiff was not immediately arrested. From the exhibits submitted in conjunction with this motion, it appears the affidavit in support of the warrant was sworn on August 13, 1990, and the warrant issued on August 22, 1990. The plaintiff was not arrested until September 9, 1990. Any inaccuracies in the report given to the police officer on July 29, 1990, are attenuated by the length of time between the report and the arrest and the lack of further activity on the part of Montgomery Ward to pursue a criminal prosecution. That a Topeka police officer chose to treat the incident as they would a shoplifting call, which it was not, and do no further investigation should not subject Montgomery Ward to liability. It is undisputed that further investigation could have been done. Further, the office of the District Attorney had the discretion of whether to file theft charges based upon the report of Glenn Hawks, not investigated, as related to the police officer. It simply would be too great a stretch to find that Montgomery Ward is subject to liability on these facts and the court will grant judgment to the defendant on the false imprisonment claim regarding the September 9, 1990, arrest.

## MALICIOUS PROSECUTION

■ To prove a claim for malicious prosecution, the plaintiff must establish that "the defendant initiated the criminal proceeding of which complaint is made, that the defendant in so doing acted without probable cause and with malice, and that the proceeding terminated in favor of the plaintiff." *Braun v. Pepper*, 224 Kan. 56, 578 P.2d 695, 698 (1978).

■ To establish that the defendant initiated the criminal proceeding, Kansas case law is clear that the defendant must have acted affirmatively in instigating or participating in the prosecution. *Barnes v. Danner*, 169 Kan. 32, 216 P.2d 804, 807 (1950). As in a cause of action for false imprisonment, merely reporting facts to a law enforcement officer who then deems a crime to have been committed and directs the defendant's arrest is not sufficient to establish this element. *Id.*

■ The analysis of this element for the purpose of malicious prosecution is necessarily similar to that for false imprisonment. Again, for the purpose of this issue, the court acknowledges that the truthfulness of Glenn Hawks's statement to the police after the alleged incident of theft is in dispute. The court further agrees with the plaintiff that providing false statements to law enforcement officials may subject the defendant to liability for malicious prosecution in a proper case.

On the present facts, however, any false statements to the police are attenuated by the lack of active participation by Montgomery Ward in procuring a prosecution and by the discretionary decision of the Shawnee County District Attorney to pursue a criminal prosecution several weeks after the incident. As stated above, the police made the initial decision to accept Glenn Hawks's statement without further investigation, in effect treating the alleged theft as a shoplifting. This is despite the reported involvement of a store employee. Subsequently, the district attorney made a decision to accept the report of the police officer, which restated the facts as reported by Glenn Hawks. Apparently the district attorney did no further investigation. The court is not saying that because the attorney had the discretion of whether to file charges Montgomery Ward escapes liability. On that basis, no claim

could ever be sustained. Rather, because this incident resulted in criminal charges in the manner it did, the court believes the district attorney's discretion is a valid and weighty factor to consider. The court finds as a matter of law that the plaintiff cannot establish the first element of his malicious prosecution claim and judgment will be granted to the defendant on this issue.

Two points bear emphasis here. First, although the court is deciding these issues as a matter of law despite whether Glenn Hawks made false statements to the police, there was undisputed objective evidence that warranted further investigation. The store receipt, which was on Bridgette Criglar's package, showed a total of $1.05 and the items in her sack clearly totaled more than that amount. It is undisputed that the plaintiff was the cashier who rang up the purchases. On that basis alone, it is the court's opinion that the defendant had probable cause to pursue the matter and relate that information to the police.

Second, although the truthfulness is disputed, Bridgette Criglar made two written and signed statements to the effect that she was aware of previous wrongdoing at the store by the plaintiff. Her source of this information was allegedly her husband, who apparently denied knowing anything about his wife's statement. In any event, these statements were made available to the police officer who took the report. Taking into consideration the posture of the entire case, the court finds the defendant must be granted judgment on the above two causes of action.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To prove a cause of action for intentional infliction of emotional distress, commonly referred to as the tort of outrage, the plaintiff must establish the following four elements:

(1) The conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiff's mental distress; and (4)

plaintiff's mental distress must be extreme and severe.

*Roberts v. Saylor,* 230 Kan. 289, 637 P.2d 1175, 1179 (1981). Liability for the tort of outrage has two threshold requirements, which initially must be determined by the court as a matter of law.

(1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it. *Id.*

The Kansas Supreme Court has provided some guidance as to what conduct should be considered extreme and outrageous for the purpose of the tort of outrage. The court states, "liability may be found only in those cases where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* The benchmark has been stated as that behavior which would cause an ordinary citizen, upon hearing the facts, to exclaim, "Outrageous!" *Id.*

The court cannot find that the defendant's behavior in this case, even if the plaintiff's allegations are true, is at all close to rising to the required level of intolerability. The court has examined the Kansas cases disallowing liability and finds the facts of those cases much more questionable than the facts of this case. *See Burgess v. Perdue,* 239 Kan. 473, 721 P.2d 239 (1986); *Neufeldt v. L.R. Foy Constr. Co.,* 236 Kan. 664, 693 P.2d 1194 (1985); *Hoard v. Shawnee Mission Medical Center,* 233 Kan. 267, 662 P.2d 1214 (1983); *Hanrahan v. Horn,* 232 Kan. 531, 657 P.2d 561 (1983); and *Roberts v. Saylor,* 230 Kan. 289, 637 P.2d 1175 (1981).

The court does not discount that if the plaintiff was falsely accused of a crime, it was unfortunate and surely upsetting to say the least. The defendant's actions, however, were not so egregious as to incur liability in this case. The plaintiff cannot meet the threshold requirements for proceeding with

this claim and judgment must be granted for the defendant on the cause of action for the tort of outrage.

## DEPRIVATION OF CIVIL RIGHTS—
### 42 U.S.C. § 1983

The plaintiff contends that Montgomery Ward acted in concert with the police in this case and is subject to liability under 42 U.S.C. § 1983. The defendant, however, maintains that no direct action was taken by the police, but by the district attorney. Further, the defendant asserts there was no plan under which the police would arrest anyone identified by Montgomery Ward as a shoplifter without independently investigating for probable cause.

In *Lee v. Town of Estes Park, Colo.*, 820 F.2d 1112, 1115 (10th Cir.1987), the court makes it clear that liability must be predicated upon actions that fairly identify one as a state actor. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In *Lee*, reporting suspected criminal activity and escorting the suspect to the police station did not result in the conclusion that the defendant had acted under color of state law. The court stated, "[I]n order to hold a private individual liable under § 1983, it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State." 820 F.2d at 1114.

In the instant case, the court finds that Montgomery Ward cannot be considered a state actor for the purpose of liability under 42 U.S.C. § 1983. First, the same reasoning used by the court above is applicable here. The nexus between the defendant's actions and the ultimate arrest and charges against the plaintiff are too tenuous upon which to predicate liability. Further, any purported implied plan or agreement between the police and the defendant in prosecuting shoplifters is irrelevant in this situation. This incident involved a store employee, who the police did not question or arrest. That the police officer chose to treat the incident as he would a shoplifting and not do further investigation should not expose Montgomery Ward to liability on this theory.

Finally, the merchant's defense might be relevant to Montgomery Ward's liability if the plaintiff had been accused of shoplifting. On these facts, however, the court finds the Kansas statute, which allows the merchant to detain persons suspected of shoplifting, provides no inference of liability.[1]

The court finds that Montgomery Ward cannot fairly be said to be a state actor. As stated by the Court in *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482, "Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." The court will grant judgment for the defendant on the cause of action for violation of the plaintiff's civil rights under 42 U.S.C. § 1983.

IT IS BY THE COURT THEREFORE ORDERED that the defendant's motion for summary judgment (Doc. 62) is granted.

---

1. This court did not address the issue of whether the merchant's defense, K.S.A. § 21–3424, in conjunction with the aider and abettor ordinance would allow the defendant to detain its employee without liability. Because of the policy behind this statute of providing the merchant a way to prevent the merchandise and suspect from leaving the store and disappearing, it is doubtful the defendant's interpretation would apply to later questioning of an employee. *See Alvarado v. City of Dodge City*, 238 Kan. 48, 708 P.2d 174, 183 (1985).