No. 80,175

Marshall Dominguez, *Appellant*, v. Paul Davidson, The Federal Express Corporation, Jerry Ward, and Alexis, Inc., *Appellees*.

(974 P.2d 112)

Opinion filed March 5, 1999.

*David M. Bryan*, of Overland Park, argued the cause and was on the briefs for appellant.

*Tedrick A. Housh III*, of Lathrop & Gage, L.C., of Kansas City, Missouri, argued the cause, and *Pamela D. Pitts*, of Memphis Tennessee, was with him on the brief for appellees Paul Davidson and The Federal Express Corporation.

*Lynn W. Hursh*, of Armstrong, Teasdale, Schlafly & Davis, of Kansas City, Missouri, argued the cause, and *Casey O. Housley*, of the same firm, was with him on the brief for appellees Jerry Ward and Alexis, Inc.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by plaintiff Marshall Dominguez from the trial court's granting of summary judgment in favor of the defendants in a defamation and false light/invasion of privacy case.

The case arises out of a workers compensation case. The defendants are Paul Davidson, plaintiff's former supervisor at the Federal Express Corporation (FedEx), and Jerry Ward, an employee of Alexis, Inc. (Alexis), the workers compensation claims administrator for FedEx. FedEx and Alexis are also named as defendants based on the doctrine of respondeat superior.

Plaintiff was employed by FedEx as a courier for 13 years when he injured his lower back while performing his job duties. Beginning on July 5, 1995, plaintiff was on leave from work due to his work-related injury. He was treated by Dr. Tyann Hamedi, who examined him four times during July. On July 19, 1995, plaintiff informed Dr. Hamedi that he was still experiencing back pain. Dr. Hamedi determined plaintiff was still suffering lower back pain and was not ready to return to work. Dr. Hamedi imposed specific light-duty work restrictions that included lifting up to 30 pounds, pushing or pulling up to 40 pounds, no kneeling or squatting, and limited bending of the back from the waist.

Also on July 19, 1995, plaintiff appeared on television promoting an upcoming baseball game between his men's all-star team and the Colorado Silver Bullets, a women's professional baseball team, to be played at Kauffman Stadium prior to a Kansas City Royals baseball game. Plaintiff attended and participated in two or more practice sessions prior to the game with the Silver Bullets which was held on July 22, 1995. Davidson observed plaintiff warming up, stretching, and playing defense for one-half inning in the July 22 game.

On July 30, 1995, Dr. Hamedi released plaintiff to return to work. Plaintiff was immediately suspended by Davidson for playing baseball while on leave with a work-related back injury without being authorized to do so by his treating physician. On August 5, 1995, plaintiff was terminated from his employment for playing baseball without medical permission while on leave for a work-related injury.

FedEx has an internal appeal process entitled "Guaranteed Fair Treatment Procedure." Plaintiff pursued that appeal process and the decision to terminate his employment was reaffirmed.

This lawsuit followed. Dr. Hamedi was originally named a defendant, and the claims at various times in the suit also included, among others, retaliatory discharge against FedEx and defamation and negligence against Dr. Hamedi. These claims have been dismissed and are not before us on appeal. It should be noted that this is not a wrongful termination or a retaliatory discharge case.

The trial court granted summary judgment against the plaintiff and in favor of the defendants and this appeal followed. Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. K.S.A. 60- 256(c). Our standard of review is de novo.

Plaintiff first claims that the trial court used the wrong standard of review when it denied his motion to reconsider, alter, or amend judgment pursuant to K.S.A. 60-259(f). The trial court noted that plaintiff requested the court to reconsider the "issue of malice based upon review of selected facts focusing on plaintiff's termination from employment, rather than the circumstances of the case as a whole." Plaintiff argues that upon a motion for summary judgment, it is not within the province of the trial court to view the circumstances of the case as whole. Rather, such a determination belongs to a jury. Plaintiff cites *Lessley v. Hardage*, 240 Kan. 72, 727 P.2d 440 (1986), and *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 756 P.2d 416 (1988), in support of this argument.

Plaintiff's argument is not convincing. The standards of appellate review are well defined for reviewing a trial court's decision to grant summary judgment. When deciding a summary judgment motion, a court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is proper if no genuine issue of fact remains. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. *Glenn v. Fleming*, 247 Kan. 296, 304-05, 799 P.2d 79 (1990); *Bacon*, 243 Kan. at 306-07.

This argument is immaterial, however, when this court reviews a trial court's ruling on a summary judgment motion, as in the case before us. This court reads the record according to the same rules applicable to the trial court. From our reading of the record, it does not appear that the trial court ignored this standard as plaintiff suggests. However, even if the trial court did not appropriately resolve all facts and inferences in favor of plaintiff, this court applies the standards stated in *Bacon* and *Lessley*. It is well established that "[o]n appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from

the evidence, summary judgment must be denied." 243 Kan. at 306 (citing *Lessley,* 240 Kan. at 73-74). In other words, "[w]hen summary judgment is challenged on appeal, this court will read the record in the light most favorable to the party who defended against the motion for summary judgment. [Citation omitted.]" 240 Kan. at 73.

In *Bacon,* this court continued its explanation of the standards for reviewing a summary judgment motion and noted that the party opposing summary judgment "has the affirmative .duty to come. forward with facts to support its claim, although it is not required to prove its case. [Citations omitted.] If factual issues do exist, they must be material to the case to preclude summary judgment. [Citation omitted.]" 243 Kan. at 307. A court is not duty bound to accept the opposing party's reading of the facts. Plaintiff's argument that the trial court simply substituted its own opinion for that of the jury fails procedurally. Even if the trial court read the record without considering specific facts and instances in favor of plaintiff, on appeal this court reads the record according to this standard. Further, this argument fails substantively. The trial court examined the facts which plaintiff asserted established malice and found that the "[a]bsence of any direct evidence or reason for malicious actions by defendants did not create a material issue of fact over the existence of malice."

A. Plaintiff's claim of defamation against Davidson and FedEx.

In *Lindemuth v. Goodyear Tire & Rubber Co.,* 19 Kan. App. 2d 95, 102, 864 P.2d 744 (1993), the court set out the elements of defamation:

" 'The tort of defamation includes both libel and slander. The elements of the wrong include false and defamatory words [citation omitted] communicated to a third person [citation omitted] which result in harm to the reputation of the person defamed. [Citation omitted.] A corporation may be liable for the defamatory utterances of its agent which are made while acting within the scope of his authority. *Bourn v. State Bank,* 116 Kan. 231, 235, 226 Pac. 769 (1924).' *Luttrell v. United Telephone System, Inc.,* 9 Kan. App. 2d 620, 620-21, 683 P.2d 1292 (1984), *aff'd* 236 Kan. 710, 695 P.2d 1279 (1985)."

The *Luttrell* court stated:

"A communication is qualifiedly privileged if it is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, if it is made to a person having a corresponding interest or duty. The essential elements of a qualifiedly privileged communication are good faith, an interest to be upheld, a statement limited in its scope to the upholding of such interest and publication in a proper manner only to proper parties." 9 Kan. App. 2d at 622.

In *Turner v. Halliburton Co.*, 240 Kan. 1, 8, 722 P.2d 1106 (1986), the court held that a "qualified privilege exists with respect to business or employment communications made in good faith and between individuals with a corresponding interest or duty in the subject matter of the communication." The *Turner* court further stated that "where there is qualified privilege, the injured party has the burden of proving not only that the statements were false, but also that the statements were made with actual malice, that is, with actual evil-mindedness or specific intent to injure." 240 Kan. 1, Syl. ¶ 5. The *Turner* court also held that generally,

"the question of actual malice in a defamation action is a question for the jury. However, under certain circumstances, a motion for directed verdict and the granting of that motion is appropriate. If the plaintiff fails to offer evidence of an extrinsic character to prove actual malice on the part of the defendant in the publication of a libel on a qualifiedly privileged occasion, and if the language of the communication and the circumstances attending its publication by the defendant are as consistent with the nonexistence of malice as with its existence, there is no issue for the jury, and it is the duty of the trial court to direct a verdict for the defendant." 240 Kan. 1, Syl. ¶ 6.

Thus, to establish a defamation claim against Davidson, plaintiff must satisfy the following elements: (1) Davidson uttered or wrote false and defamatory words; (2) Davidson communicated these statements to a third person; and (3) plaintiff's reputation was injured as a result. Plaintiff admits that Davidson's statements and publications fall within the qualified privilege as set out in the *Luttrell* case. Plaintiff also acknowledges that he has the burden of proving not only that Davidson's statements were false, but that such statements were made with actual malice.

Davidson's August 10, 1995, memorandum contains the statements that plaintiff claims give rise to his cause of action. Plaintiff avers that the following statements in this memorandum were de-

famatory: "[T]here were no objective findings to support [plaintiff's] injury claim," and "I believe what he did is theft, stealing from the company benefits department, making a false claim, and he should be terminated for his actions." The trial court noted that although Davidson observed plaintiff playing baseball with an injured back, he did not automatically conclude that plaintiff was not truly injured or that he was violating his medical restrictions. Rather, Davidson suspended plaintiff from his job pending an investigation into the baseball incident. The trial court noted that Davidson contacted Dr. Hamedi and inquired whether she had given plaintiff permission to play baseball. It was not until Dr. Hamedi informed Davidson that she did not give plaintiff permission to play baseball, nor would she have given such permission if plaintiff had asked her, that Davidson decided to terminate plaintiff's employment.

The trial court noted that the main disagreement among the parties, as well as the focus of their summary judgment motions, was the extent to which plaintiff was prohibited from playing baseball by Dr. Hamedi during the period of his injury. Plaintiff asserts that playing baseball was not a violation of his work restrictions. Therefore, plaintiff maintains that Davidson's communications to third parties that he was stealing from the company by filing a false workers compensation claim were false, malicious, and amounted to defamation.

Plaintiff acknowledged that Dr. Hamedi told him that when Davidson questioned her regarding the work restrictions placed on him, she told Davidson that plaintiff had violated his work restrictions. The July 19 Work Ability Report supports the conclusion that plaintiff violated a work restriction. Although Dr. Hamedi never specifically told plaintiff that he could not play baseball, the July 19 Work Ability Report provides that plaintiff should limit the "bending of the back from the waist."

In his answers to interrogatories, plaintiff stated:

"While I was speaking with Dr. Hamedi at her office, Dr. Hamedi told me that she had spoken to Paul Davidson and told him that I was engaging in activities contrary to my work restrictions. Dr. Hamedi also stated that she knew I had

never asked about playing baseball, and that I was never told by her that playing in any baseball game was outside my work restrictions.

"Dr. Hamedi also stated that even though she had never told me not to play in the game, she felt that I violated my work restrictions by playing in the game, and she told Paul Davidson the same thing. She stated that anyone with common sense would have known not to play in the game."

The trial court ruled that plaintiff had failed to offer evidence of an extrinsic character to prove actual malice and that Davidson's action was not motivated by malice or reckless disregard of the truth. Plaintiff contends that the trial court disregarded his extensive and uncontroverted evidence that he was terminated solely for fraud and theft (his workers compensation claim) and that the trial court ruled as a matter of law that he was terminated for playing baseball without medical permission while on leave pursuant to a workers compensation claim. Plaintiff argues that the court's finding that he violated his medical restrictions while on leave is contrary to all of the medical testimony presented to the court.

Plaintiff is only partially correct in these assertions. The trial court did not rule that plaintiff's termination resulted solely from the unacceptable conduct of playing baseball while on leave pursuant to a claim under the Workers Compensation Act. The court further analyzed Davidson's actions in its conclusions of law and found that plaintiff's case was similar to the *Turner* case. The trial court stated:

"The Kansas Supreme Court outlined that a supervisor's accusations, even if technically incorrect, are not malicious if they reflect an employer's natural and logical conclusions about an employee who may be stealing from the employer. . . . In *Turner*, the supervisor terminated plaintiff for apparently stealing company tools. This conduct was later communicated to future employers of Turner, other employees, and the police. Even though the theft was a drunken joke, lacking specific intent for a criminal conviction, it was a natural and logical conclusion under the facts for the employer to classify it as a theft. [Citation omitted]. In this case, akin to *Turner*, defendant Davidson's accusatory statements were natural and logical conclusions based on what he had witnessed at Kauffman Stadium. The record provides no evidence of malice or reckless disregard for the truth about the statements made by the defendant Davidson."

Davidson had a copy of plaintiff's Work Ability Reports written after each of plaintiff's visit with Dr. Hamedi before he observed

plaintiff play in the baseball game. The report written after the examination immediately preceding the baseball game restricted plaintiff from bending at the waist when possible. It was not unreasonable for Davidson to conclude that playing third base at practices and in a game involved unnecessary bending at the waist. Thus, Davidson did not necessarily decide that plaintiff had violated his work restrictions out of malice.

The analysis of malice in the *Turner* case is analogous to the cased at hand. The *Turner* court held:

"At best the evidence relied upon by Turner to prove evil-mindedness or specific intent to injure shows an employer who was understandably upset over the theft of the Ryser and other company tools, and who had been given information that Turner was involved in the disappearance of the Ryser tools. For an employer to classify such a disappearance as a theft or the stealing of company property would be the natural and logical conclusion under the facts of this case. Turner makes much of a failure by Arend to make an investigation. He appears to contend that Arend should have contacted Coffey and Burr, neither of whom were Halliburton employees, and makes much of Arend's failure to seek out other witnesses. Such activities are more appropriately left to the police. . . . The only showing of evil-mindedness or specific intent to injure comes from the assumptions of the appellee in his brief and not from the evidence produced at trial. It is unfortunate that Turner's 'prank' or 'joke' backfired and that he suffered unanticipated and unwanted results, but that, in and of itself, does not show malice by or place liability upon the defendants. Turner created the situation which led to the unfortunate results." 240 Kan. at 9-10.

In the case before us, if we review the evidence relied upon by plaintiff to establish actual malice, in the best possible light from plaintiff's standpoint, we reach the same conclusion as the *Turner* court. There is no evidence of evil motive or a specific intent to injure plaintiff on the part of defendants. Plaintiff's allegations of malice are: Davidson was informed that plaintiff had been on television promoting the baseball game; Davidson and one of plaintiff's co-workers attended the baseball game and observed plaintiff bending and moving at the waist without any apparent discomfort; and Davidson wrote a memorandum on August 10, 1995, stating in pertinent part:

"In a worst case scenario Marshall Dominguez was engaged in making a fraudulent on the job injury claim and best he failed to follow his doctor's instruction while recovering from an injury. Given the fact that he asked about swimming

and not about playing baseball indicates to me that he knew such an activity would not be approved so he didn't ask. I also find it hard to believe that a person suffering from numbness in his leg and not able to bend from the waist can play even a ½ inning of baseball, which he played very well. If he was well enough to play ball he should have been well enough to come to work. I believe what he did is theft, stealing from the company benefits department, making a false claim, and he should be terminated for his actions."

Such statements by Davidson show that he did not rely solely on Ward's information that plaintiff did not have any objective injuries in making his decision. Plaintiff's claim that Davidson acted with malice is negated by the fact that plaintiff was suspended with pay while Davidson conducted an investigation into the baseball incident.

The trial court ruled that plaintiff's defamation claim also failed for lack of evidence supporting the claim that Davidson's statements caused harm to his reputation in the community. The court stated that Davidson's "statements were presented only to an exclusive group of managerial employees at FedEx. All the plaintiff brings forth to support his allegations is an appeal letter to a supervisor in which he states that his family and friends believe that FedEx treated him unfairly." The court ruled that "[t]his does not qualify as evidence of harm to plaintiff in the community."

In this case, as in *Lindemuth*, 19 Kan. App. 2d 95, the record is devoid of evidence of such a nature that would show how plaintiff's reputation in the community of his residence has been affected. Therefore, the trial court did not err in granting summary judgment in favor of defendants, given that there is no material issue of fact regarding malice or harm to reputation.

B. Plaintiff's claim of defamation against Ward and Alexis.

Plaintiff's claim against Ward is based on the statement in Davidson's August 10 memorandum that when Ward called to discuss plaintiff's case with Dr. Hamedi, he was not able to talk to Dr. Hamedi directly. However, Ward "did talk to the nurse who said there were no objective findings to support [plaintiff's] injury claim." Plaintiff contends that Ward inaccurately stated that he called Dr. Hamedi's office and that someone in Dr. Hamedi's office said he had no objective signs of injury. Counsel for Ward/

Alexis asked plaintiff whether he was accusing Ward of being a liar, or whether Ward was simply passing on information that he heard to Davidson. "He [was] just passing on something he heard, isn't that correct?" Plaintiff answered: "Passing it on and possibly to people he didn't check with me to talk to."

Plaintiff also admitted in this deposition testimony that his reputation in the community had not been harmed. Counsel asked plaintiff the following question, "None of your family, friends, or co-workers or acquaintances in this world think even one iota less about you because of that one paragraph that appears in Exhibit 26 attributed to Jerry Ward. That's a fact, isn't it Mr. Dominguez?" Plaintiff answered, "I couldn't say if they did or didn't." Counsel then asked him, "You can't think of a soul that thinks iota less of you, can you?" Plaintiff answered, "Not to my knowledge."

As we view the record, Ward only asked and reported information about plaintiff's condition on the July 19 and 28 exams by Dr. Hamedi. Plaintiff was first examined by Dr. Hamedi on July 5, 1995. Dr. Hamedi testified plaintiff did have objective symptoms on July 12, but was improving, and that according to her notes there were no objective medical findings from the July 19, 1997, examination. She also indicated that trying to break down objective and subjective findings is "something that medically is very, very difficult to do because you use both objective and subjective findings to make your determinations and your recommendations, so you can't just separate them all out completely." Dr. Hamedi further testified that on the July 19 examination her impression was that plaintiff was improving. Counsel for Alexis clarified that on the July 19 visit, "there were no objective signs of injury."

Plaintiff is correct that when the record is viewed in a light most favorable to the plaintiff, Dr. Hamedi's nurse did not convey the information Ward attributed to her to Davidson. However, the record shows Ward did obtain the information from Dr. Hamedi and was referring to the July 19 and July 27 exams. Dr. Hamedi testified there were no objective signs on those dates.

In any event, Davidson testified he did not rely solely on Ward's report about objective signs of injury when he made the decision to terminate plaintiff. Plaintiff, however, maintains that

"the false and defamatory statement made by Ward to Paul Davidson damaged plaintiff in that the false and defamatory statement caused or contributed to cause the plaintiff's termination from employment. Plaintiff admits that he is suing both Ward and Alexis, Inc. also because Jerry Ward communicated to Paul Davidson, with actual malice and a specific intent to injure plaintiff, a false and defamatory statement that Dr. Hamedi's nurse told Jerry Ward that plaintiff had no objective signs of injury."

To show actual malice, plaintiff submitted an affidavit on April 26, 1997, describing an angry encounter with Ward about his wife's workers compensation claim in 1993.

The affidavit is insufficient to support actual malice. In summary, Davidson relied on many factors in his decision to terminate plaintiff. This issue fails.

Plaintiff also claims defendants are liable for false light/invasion of privacy. In *Rinsley v. Frydman*, 221 Kan. 297, Syl. ¶ 1, 559 P.2d 334 (1977), this court stated that "[o]ne who gives to another publicity which places him before the public in a false light of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy." Likewise, in *Castleberry v. Boeing Co.*, 880 F. Supp. 1435, 1442 (D. Kan. 1995), a case decided under Kansas law, the court stated that false light/invasion of privacy is one of four types of invasion of privacy and the elements of the false light type are: " '(1) publication of some kind must be made to a third party; (2) the publication must falsely represent the person; and (3) that representation must be highly offensive to a reasonable person.' [Citations omitted.]"

In *Ali v. Douglas Cable Communications*, 929 F. Supp. 1362, 1383 (D. Kan. 1996), the court explained that publicity is different from the term publication within the purview of the elements of defamation in that publication

"is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."

In the case before us, plaintiff did not present any evidence to show such widespread disclosure of private matters as to constitute publicizing. Plaintiff's false light/invasion of privacy claim fails be-

cause the alleged offensive statements had not become common knowledge in the business community or in any other public arena.

Plaintiff's claim fails for an additional reason. The *Castleberry* court also stated that defamation and false light/invasion of privacy claims are treated similarly by the courts and noted that a ·

" 'false light privacy action differs from a defamation action in that the injury in privacy actions is mental distress from having been exposed to public view, while the injury in defamation actions is damage to reputation.' [Citations omitted]. Truth and privilege are defenses available in both causes of action. [Citations omitted]." 880 F. Supp. at 1442.

In the case at hand, as in the *Castleberry* case, the qualified privilege defense applies. Plaintiff acknowledged under the defamation section of his brief that defendants had qualified immunity and, thus, he was required to prove that they acted with actual malice. Therefore, not only did plaintiff fail to present evidence that the matter was made public by communicating it to the public at large, but also, even if such evidence had been presented, defendants had the defense of qualified privilege. In conclusion, the trial court did not err when it granted summary judgment in favor of defendants.

Affirmed.