NOT DESIGNATED FOR PUBLICATION

No. 129,047

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

T.U. and X.X.,
*Appellants*,

v.

KATHLEEN BAKER, et al.,
*Appellees.*


MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Submitted without oral argument. Opinion filed June 18, 2026. Affirmed in part and dismissed in part.


*T.U.* and *X.X.*, appellants pro se.


*Michael J. Fleming*, of Lee's Summit, Missouri, for appellees.


Before GARDNER, P.J., ARNOLD-BURGER and SCHROEDER, JJ.


PER CURIAM: T.U. and X.X. sued several defendants for false light invasion of privacy, intentional infliction of emotional distress, and civil conspiracy. The district court dismissed these claims based on lack of standing and insufficient pleadings. Appellants challenge each ruling and claim judicial bias. Finding no error, we affirm in part and dismiss in part.

1

FACTUAL AND PROCEDURAL BACKGROUND

In February 2023, students at Wolf Springs Elementary School (WSE), which is part of the Blue Valley School District, told their parents that they had overheard a classmate, D.U., saying he had made a "murder list." This list allegedly named certain students in D.U.'s class that D.U. threatened to kill. D.U. also allegedly talked about guns while at school.

Several parties reported these allegations to school officials and law enforcement. Kathleen Baker, a school nurse, learned about the allegations from a WSE teacher and believed that as a Blue Valley School District employee and a mandatory reporter, she had a duty to report the information. So she reported it to a school resources officer. Baker did not know the name of the student accused and thus did not provide a name in her report. Brittany Jacobson, a parent of a WSE student in D.U.'s grade, heard about the allegations from her daughter. She then reported the matter to WSE and law enforcement.

Another parent, Catherine Singleton, learned about the alleged murder list during a meeting with her child and WSE's principal. She did not report the allegations but at some later point, "had an exchange" with T.U. (Father) on a Facebook page used by parents of WSE students in D.U.'s class. Singleton did not use D.U.'s name during the exchange, which was visible to others. But, she admittedly told Father that his son threatened to use guns and harm others and that Father needed to take those threats seriously.

With the assistance of law enforcement, WSE launched an investigation. Without naming D.U. specifically, the principal announced to parents and WSE staff that she received reports of the alleged murder list allegations and an investigation was being conducted. D.U. was temporarily suspended from WSE pending the investigation. He was later permanently removed and transferred to a different school. Before these events,

2

D.U.'s brother also attended WSE and D.U.'s mother worked at WSE as a teacher's aide. But like D.U., they were transferred to a different school following these events.

Father filed a pro se petition—individually and on D.U.'s behalf—suing Baker, Jacobson, Singleton, and 10 unnamed individuals (Appellees). The suit alleged defamation, invasion of privacy, intentional infliction of emotional distress, and civil conspiracy. The unnamed individuals were listed in the petition as "Does 1 through 10 all of whom are members of the [WSE] 2019 parent cohort but who remain unidentified at the time of this petition."

Appellees moved to strike under K.S.A. 60-5320, arguing the petition was filed to harass them and in violation of the anti-SLAPP Act. At a hearing on the motion, the district court informed Father that as a nonlawyer, he could not pursue legal claims on anyone else's behalf, including D.U. The district court allowed Father 30 days to hire counsel to represent D.U. before D.U.'s claims would be dismissed. Father did not hire an attorney within that time, so the district court dismissed the petition without prejudice. But Father filed an amended pro se petition, which named Mother and Father (Appellants) as the petitioners and Appellees as the defendants.

The amended petition did not assert a claim for defamation but claimed false light invasion of privacy, intentional infliction of emotional distress, and civil conspiracy. To support the claims, Appellants provided nearly identical facts as previously pleaded in their original petition.

Highly summarized, Appellants alleged that after moving to Kansas in 2022, D.U. began attending WSE and X.X. (Mother) started working there as an aide. D.U. was allegedly treated differently and unfairly by his teacher and certain classmates. Before the murder list allegations arose, D.U. was not reported or disciplined for having any significant behavioral issues. Then in February 2023, Appellees learned about the

3

reported murder list allegations. These accusations were allegedly reported by one child to their parent. Appellees then broadly reported the allegations to WSE, law enforcement, and others. And at least Singleton posted about the matter on social media. In doing all this, Appellees allegedly instigated and later prolonged the investigations of D.U. Appellees also did this purposefully and as a part of a conspiracy to have D.U. expelled from WSE. According to the amended petition, Appellees acted like a "witch hunting mob" in trying to ensure D.U.'s expulsion. Eventually, D.U. and his family members had to transfer to a different school. Damages also included "embarrassment and severe emotional distress."

Father informed the district court that after these events, D.U. missed several months of school between April and December 2023. The State initiated a truancy case, and D.U. was appointed a guardian ad litem. Then, "[p]artly due to the pressure from the truancy court, and partly due to relentless harassment of D.U. by school staff and peers," Father registered D.U. for homeschooling in February 2024.

Appellants also moved for a change of venue. They argued that one of the Johnson County district judges was a named defendant in this case; another Johnson County district judge showed prejudice against Appellants' family while presiding over D.U.'s truancy case; and the Blue Valley School District had great influence throughout Johnson County, including over judicial employees and potential jurors. The district court denied the motion, finding Appellants' arguments factually and legally unsupported.

Appellees moved to dismiss the amended petition under K.S.A. 60-212(b)(6), arguing Appellants failed to state any justiciable claims. The district court granted this motion, finding Appellants lacked standing to bring a false light invasion of privacy claim against Appellees and failed to sufficiently state a claim for intentional infliction of emotional distress and civil conspiracy. Regarding Appellants' lack of standing, the court explained that the amended petition alleged only that Appellees' conduct resulted in a

4

breach of D.U.'s privacy rather than Appellants' privacy. Appellants also failed as a matter of law to allege facts showing that Appellees' conduct was extreme and outrageous enough to make a claim for intentional infliction of emotional distress. Finally, because Appellants failed to sufficiently argue the first two torts, the district court determined that Appellants' civil conspiracy claim also necessarily failed. As explained in the order, a civil conspiracy requires proof that the defendants committed at least one separate, actionable tort.

Appellants timely appeal. They filed a joint, pro se appellate brief, challenging each of the district court's rulings and claiming judicial bias.

## I. DID THE DISTRICT COURT ERR IN DISMISSING APPELLANTS' FALSE LIGHT INVASION OF PRIVACY CLAIM BY FINDING APPELLANTS LACK STANDING TO LITIGATE THE CLAIM?

Appellants assert that the district court erred in finding they lack standing to sue Appellees for false light invasion of privacy. They argue that in deciding this, the district court considered only some of the facts alleged in the amended petition, which related to D.U., and ignored the allegations that related specifically to their rights of privacy.

*Standard of Review*

Standing is a component of the district court's subject matter jurisdiction. Whether a party has standing is a question of law over which this court has unlimited review. *In re L.L.*, 315 Kan. 386, 390, 508 P.3d 1278 (2022).

Whether a district court erred by granting a motion to dismiss for failure to state a claim is also subject to unlimited review. *Jayhawk Racing Properties v. City of Topeka*, 313 Kan. 149, 154, 484 P.3d 250 (2021). This court views the well-pleaded facts in a light most favorable to the plaintiff and assumes as true those facts and any inferences

5

reasonably drawn from them. If those facts and inferences state any claim upon which relief can be granted, then dismissal is improper. Dismissal is proper only when the allegations in the petition demonstrate the plaintiff has no claim. *Kudlacik v. Johnny's Shawnee, Inc.*, 309 Kan. 788, 790, 440 P.3d 576 (2019); K.S.A. 60-212(b)(6).

But an appellate court need not accept conclusory allegations as to the legal effects of the events if the allegations are not supported or are contradicted by the description of events. *McCormick v. Board of Shawnee County Comm'rs*, 272 Kan. 627, 646, 35 P.3d 815 (2001).

*Appellants Lack Standing*

Basically, standing means a party must have a personal stake in the outcome of a case. There are two types of standing: traditional and statutory. *Baker v. Hayden*, 313 Kan. 667, 672-73, 490 P.3d 1164 (2021). When standing is determined on a motion to dismiss without an evidentiary hearing, the plaintiff need only make a prima facie showing, and the court must resolve factual disputes in the plaintiff's favor. *KNEA v. State*, 305 Kan. 739, 747, 387 P.3d 795 (2017).

K.S.A. 60-217(a)(1) states that "[a]n action must be prosecuted in the name of the real party in interest." Under Kansas' traditional, two-part standing test, a party must demonstrate they have suffered a cognizable injury and that there is a causal connection between the injury and the challenged conduct. A party establishes a cognizable injury— i.e., an injury in fact—when they personally suffer some actual or threatened injury as a result of the challenged conduct. *Hodes & Nauser v. Stanek*, 318 Kan. 995, 1002, 551 P.3d 62 (2024). For a matter to be justiciable, the parties must have "'adverse legal interests that are immediate, real, and amenable to conclusive relief.'" 318 Kan. at 1002.

6

Appellants accuse Appellees of false light invasion of privacy, which is one of four types of invasion of privacy claims. *Dominguez v. Davidson*, 266 Kan. 926, 937, 974 P.2d 112 (1999); see Restatement (Second) of Torts §§ 652B-652E. A party claiming false light invasion of privacy must show these elements: (1) a publication to a third party; (2) that the publication falsely represented the person; and (3) that the representation would be highly offensive to a reasonable person. *Dominguez*, 266 Kan. at 937.

Again, the district court found Appellants lack standing to bring this claim because they alleged only that Appellees' conduct breached D.U.'s privacy, rather than their own. In making this determination, the district court specified the following facts alleged in the amended petition:

- "Singleton posted on social media about D.U. portraying him as a safety threat, as a sociopathic bully who uses profanity and who intimidates students."
- "Baker instigated a criminal investigation against D.U. by filing a police report."
- "Defendants 'themselves did not witness anything nor had any evidence' (about D.U.). They just circulated secondhand information . . . to others."
- "Defendants put pressure on the school administrators and the District bureaucrats to continue the school investigation against D.U. and force him out of school."
- "Defendants took concerted actions at around the same time against the District to make the District change its policies regarding the Chinese Immersion Program. 'These actions . . . gave Defendants a sense of triumph and which made them feel powerful enough to get the District to do some other things they wanted, such as declaring D.U. guilty of a heinous wrongdoing and expelling him from WSE.'"

7

- "The Defendants 'acted like a witch-hunting mob on and around February 10, 2023, and would not be satisfied with any outcome but the elimination of D.U. from WSE.'"
- "Defendants 'conspired to make D.U. out to be a threat and purge him from the school by using police and school investigation [as] weapons.'"
- "Singleton was the leader of the campaign against N.B. (a classmate of D.U.'s) [and] . . . Jacobson was at least one of the leaders in the campaign against D.U."

Appellants tacitly concede that these allegations do not show that they have standing to pursue a privacy claim.

Still, Appellants argue that the district court focused too narrowly on these allegations and improperly ignored these two facts alleged in their amended petition: (1) "Singleton 'blamed [Father's] parenting for D.U.'s alleged disorderly conduct [in a Facebook post]'"; and (2) "'[Father] and [Mother] also experienced embarrassment and severe emotional distress when . . . Singleton and some other Defendants blamed their parenting, on social media, for D.U.'s alleged disorderly conduct.'" Appellants contend that, because these facts allege that they were also targets of and affected by Appellees' conduct, they have standing to pursue their invasion of privacy claim.

Appellees do not acknowledge these facts. They instead contend that Appellants simply repackaged the argument previously made on D.U.'s behalf in an attempt to litigate a claim that belongs to D.U.

Although Appellants added the two allegations that reference them specifically, the allegations only summarily and tangentially suggest that Appellees also targeted them by blaming them for D.U.'s behavior. Appellants base their invasion of privacy claim primarily on their relationship to D.U. and the public's reaction to his alleged conduct, not

8

on Appellees' conduct directed toward them. Regardless of these additions, the crux of Appellants' invasion of privacy claim alleges that on February 12, 2023, "Defendant Singleton posted on social media about D.U., portraying him as a safety threat, as a sociopathic bully who uses profanity and who intimidates students. She also blamed [Father's] parenting for D.U.'s alleged disorderly conduct."

And Appellants fail to state what D.U.'s "alleged disorderly conduct" is, so the reader cannot tell whether they are claiming this conduct is bullying, using profanity, and intimidating students, or something else. The false light invasion of privacy count, read together, fails to state that D.U.'s parents personally suffered some actual or threatened injury as a result of the social media post on February 12.

To establish standing, a party must demonstrate they have suffered a cognizable injury and that there is a causal connection between the injury and the challenged conduct. A cognizable injury is shown when the party *personally* suffers some actual or threatened injury as a result of the challenged conduct. *Hodes & Nauser*, 318 Kan. at 1002. Appellants have not alleged any actual or threatened harm that Appellants caused them. The district court thus correctly determined Appellants' lack of standing to make this claim, which actually belongs to D.U.

Appellants' allegations about the social media posts purportedly blaming their parenting are also unsupported. Even more, Appellants' own evidence contradicts their allegations. The amended petition cites an exhibit attached to the petition as support for their claim. That exhibit includes screenshots of comments made on a Facebook post on WSE's Facebook page by Singleton and another person who is not a party here. The screenshots show that Father made the initial post that Singleton and the other person commented on.

9

Singleton's comment begins by characterizing Father's post as a "sad attempt [to] deflect . . . [D.U.]'s behavior." It then states, "Nobody wants to send our kids to a school that is unsafe. I think we can all agree. *That change starts within each of our homes*." (Emphasis added.) Singleton also suggested in this comment that D.U. needed to take "ownership of the behavior" and parents "can role model for [their children] how . . . [to] handle bullying [and] talk[] about emotions." The comment ends by stating: "Your kid is saying he's going to kill other kids [and] shoots them with his finger. He talks of guns. Own it—let us know you['re] working on it. Let us know you are taking this serious[ly]."

Below this, the other commentor stated: "We know that even the best of parents can have children that act out. However, I'm sadden[ed] to hear that teachers are expected to teach in an environment where parents turn accountability into 'politics.' Seems to be the answer to everything when someone isn't being accountable."

Contrary to Appellants' characterization, neither of these comments directly blamed Appellants' parenting for D.U.'s actions, refuting the basis of their invasion of privacy claim. And as already noted, Appellants only summarily alleged that Singleton and others blamed their parenting on social media. This type of allegation—unsupported and contradicted by the description of the events—is conclusory, so this court need not accept it as true. See *McCormick*, 272 Kan. at 646. Because these are the only facts that Appellants alleged to show Appellees' conduct harmed or threatened to harm them, we affirm the district court's finding that Appellants lack standing.

*Alternative Basis for Dismissal Under K.S.A. 60-212(b)(6)*

The record shows an alternative basis for affirming the district court's dismissal of this claim. We can affirm the district court's judgment as correct for a different reason. See *Nicholson v. Mercer*, 319 Kan. 712, 717, 559 P.3d 350 (2024) (affirming Kansas Court of Appeals as right for the wrong reason); *Midfirst Bank v. Sipple*, No. 128,054,

10

2026 WL 482568, at *7 (Kan. App. 2026) (unpublished opinion) (citing *Nicholson* for "right for the wrong reason" rule and affirming trial court's judgment of foreclosure).

*Standard of Review*

This court's review of the district court's order dismissing Appellants' petition for failure to state a claim is unlimited. *Jayhawk Racing Properties*, 313 Kan. at 154. The well-pleaded facts are viewed in a light most favorable to the plaintiff, and we assume as true those facts and any inferences reasonably drawn from them. If these facts and inferences state any claim upon which relief can be granted, dismissal is improper. *Kudlacik*, 309 Kan. at 790; K.S.A. 60-212(b)(6).

Kansas is a notice-pleading state. See *Williams v. C-U-Out Bail Bonds*, 310 Kan. 775, 784, 450 P.3d 330 (2019). So generally, a petition needs only "(1) [a] short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for the relief sought." K.S.A. 60-208(a). A legal theory of relief need not be detailed, so long as the petition apprises the defendant of the facts on which the plaintiff claims to be entitled to relief. *Beck v. Kansas Adult Authority*, 241 Kan. 13, 25, 735 P.2d 222 (1987); see also K.S.A. 60-208(e) (directing courts to construe pleadings "so as to do justice").

Appellants' petition fails to state facts meeting all elements of false light invasion of privacy. Those elements are:

> "(1) that publication of some kind must be made to a third party; (2) that the publication must falsely represent the person; and (3) that representation must be highly offensive to a reasonable person. " *Byers v. Snyder*, 44 Kan. App. 2d 380, 396, 237 P.3d 1258 (2010) (citing *Dominguez v. Davidson,* 266 Kan. 926, 937, 974 P.2d 112 [1999]).

11

In their amended petition, Appellants allege that Singleton and other Defendants blamed their parenting, on social media, for D.U.'s alleged disorderly conduct. This satisfies the first element of false light invasion of privacy—publication to a third party. But Appellants' amended petition fails to allege that Singleton falsely blamed their parenting for D.U.'s alleged disorderly conduct, or that her blaming their parenting was highly offensive to a reasonable person, as this tort requires. Appellants alleged that Appellees caused "widespread rumors" that Appellants were "horrible parents with horrible children." And although Appellants suggested that Appellees' statements about D.U. were false and highly offensive, alleging elsewhere that D.U. was subjected to "false accusations" of "heinous wrongdoing," nowhere does the amended petition include two necessary elements—that the social media statements falsely represented them or that the false representations are highly offensive to a reasonable person.

Appellants thus failed to allege facts necessary to show false light invasion of privacy. Cf. *Hart v. U.S.D. #244 Bd. of Educ.*, No. 110,172, 2014 WL 3020476, at *8 (Kan. App. 2014) (unpublished opinion) (affirming summary judgment on false light invasion of privacy claim for failing to allege that statements made by employer were false or highly offensive to a reasonable person and petition admitted the statements did not offend her). They thus failed to state a claim for that tort. See *Zhu v. St. Francis Health Ctr.*, No. 94,900, 2007 WL 316805, at *5 (Kan. App. 2007) (unpublished opinion) ("Zhu does not allege the report was false; thus, Zhu failed to state a claim for false light invasion of privacy.").

So even if Appellants had standing to bring a false light invasion of privacy claim against Appellees, the district court's dismissal of this claim is still correct.

12

II.     DID THE DISTRICT COURT ERR BY DISMISSING APPELLANTS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FOR FAILURE TO ALLEGE FACTS SHOWING SUFFICIENTLY EXTREME AND OUTRAGEOUS CONDUCT?

Appellants next challenge the district court's conclusion that Appellees' conduct, as alleged in the amended petition, was not sufficiently extreme and outrageous to support a viable claim for intentional infliction of emotional distress. Appellants contend that whether Appellees' conduct met this standard raised a question of fact that should have been submitted to a jury, so the district court erred by deciding this as a matter of law. In a separate but related issue, Appellants also argue that when reviewing their claims, the district court did not assume the facts alleged in their petition were true, as K.S.A. 60-212(b)(6) requires, and did not view the facts in a light most favorable to them.

*Discussion*

To establish a claim of intentional infliction of emotional distress (or outrage), a plaintiff must prove four elements:

> "(1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe." *Valadez v. Emmis Communications*, 290 Kan. 472, 476, 229 P.3d 389 (2010) (citing *Taiwo v. Vu*, 249 Kan. 585, 592, 822 P.2d 1024 [1991]).

See PIK Civ. 4th 127.70.

To determine whether a plaintiff has stated a viable claim for intentional infliction of emotional distress, the district court must find two threshold requirements are met: (1) the court can reasonably regard defendant's conduct as so extreme and outrageous as to permit recovery; and (2) the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no

13

reasonable person should be expected to endure it. *Valadez*, 290 Kan. at 477 (citing *Roberts v. Saylor*, 230 Kan. 289, 292-93, 637 P.2d 1175 [1981]).

These are stringent requirements and, contrary to Appellants' argument on appeal, the allegedly tortious conduct may be reviewed first by the district court as a matter of law. See *Dotson v. McLaughlin*, 216 Kan. 201, 211, 531 P.2d 1 (1975) ("[I]t is for the court to determine in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so, and where reasonable men may differ, the question is for the jury to determine.").

### No Extreme and Outrageous Conduct

To support this claim, a petitioner must allege conduct that is "so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245, 257, 978 P.2d 922 (1999). Extreme and outrageous conduct does not arise from "'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Bradshaw v. Swagerty*, 1 Kan. App. 2d 213, 216, 563 P.2d 511 (1977) (quoting *Dotson v. McLaughlin*, 216 Kan. 201, 210, 531 P.2d 1 [1975]). Conduct may be considered to be extreme and outrageous "when the recitation of the facts to an average citizen would arouse resentment against the actor and lead that citizen to spontaneously exclaim, 'Outrageous!'" *Fusaro v. First Family Mtg. Corp.*, 257 Kan. 794, 805, 897 P.2d 123 (1995).

This sets a high bar, thus most Kansas cases have found the alleged facts insufficiently outrageous to meet that test. *Lindemuth v. Goodyear Tire & Rubber Co.*, 19 Kan. App. 2d 95, 100-01, 864 P.2d 744 (1993); see, e.g., *Moore v. State Bank of Burden*, 240 Kan. 382, 388, 729 P.2d 1205 (1986) (no outrage claim where bank erroneously set

14

off funds against a legitimate indebtedness owed to bank); *Burgess v. Perdue*, 239 Kan. 473, 475-77, 721 P.2d 239 (1986) (no outrage claim where doctor phoned mother after son's death to tell her she "'had her son's brain in a jar'"); *Neufeldt v. L.R. Foy Constr. Co.*, 236 Kan. 664, 668-69, 693 P.2d 1194 (1985) (no outrage claim allowed by a wife recovering from a miscarriage who was falsely told that an arrest warrant had been issued for her husband); *Roberts*, 230 Kan. at 295 (no outrage claim when doctor expressed dislike of patient right before patient underwent surgery); *Ely v. Hitchcock*, 30 Kan. App. 2d 1276, 1289, 58 P.3d 116 (2002) (funeral director allowing plaintiff to view his mother's body with a cut to her forehead and blood on her face and hair not sufficient to support claim of outrage); *Henderson v. Ripperger*, 3 Kan. App. 2d 303, 305-06, 594 P.2d 251 (1979) (waitress falsely accusing patron of leaving without paying in front of other customers not sufficient to support a claim of outrage). But see *Gomez v. Hug*, 7 Kan. App. 2d 603, 610-11, 645 P.2d 916 (1982) (claim for intentional infliction of emotional distress sufficient to survive summary judgment where plaintiff was subject to vulgar, racist expressions and threats of violence resulting in potentially serious medical problems).

But here, we are not reviewing the facts, as factual disputes cannot be resolved or decided on a motion to dismiss for failure to state a claim. The trial court's review, and ours, is limited to a review of the pleadings. *John Doe v. M.J.*, 315 Kan. 310, 313, 508 P.3d 368 (2022). A party typically moves to dismiss early in a case "when many of the facts have not yet been discovered and legal theories may be in flux." *Rector v. Tatham*, 287 Kan. 230, 232-33, 196 P.3d 364 (2008); *Pioneer Ridge Nursing Facility Operations v. Ermey*, 41 Kan. App. 2d 414, 418-19, 203 P.3d 4 (2009). See *Curts v. Dillard's, Inc.*, 30 Kan. App. 2d 814, 815-16, 48 P.3d 681 (2002) (finding the trial court properly dismissed plaintiffs' claim of negligent infliction of emotional distress for failure to state a claim for relief because the petition failed to allege physical injury, an essential element of that claim), *disapproved of on other grounds by Hallam v. Mercy Health Center of Manhattan, Inc.*, 278 Kan. 339, 97 P.3d 492 (2004).

15

In support of their claim, Appellants alleged that Appellees spread unsubstantiated rumors and spurred unnecessary investigations, which led to D.U. and his family members' removal from WSE:

- "Many Defendants framed a case against D.U. in an attempt to force D.U. out of WSE. Defendant Baker instigated a criminal investigation against D.U. by filing a police report. Defendant Jacobson followed suit."
- "One of the school resource officers who investigated the allegations against D.U. told [Father] that 'Parents were firing up everyone', and that parents' reports were not useful at all. In that regard, Defendants themselves did not witness anything nor had any evidence. They were just circulating secondhand information about the allegations, i.e., what they had heard from each other and/or from their children, who were similarly passing along what they had heard from others."
- "The aforementioned school resource officer unequivocally told [Father] that he found no threat on February 10, 2023, and that D.U. could go back to the educational setting on the same day."
- "However, some of the Defendants put pressure on the school administrators and the District bureaucrats to continue the school investigation against D.U. and force him out of school."
- "In that regard, the district bureaucrat Shelly Nielsen told the Parents on February 17, 2023 that they received calls and emails from 10-15 families regarding the murder list."
- "In the email she sent to the Parents on February 11, 2023, [WSE's principal] mentions the widespread disruption the 'murder list incident' caused in the community."
- "In the email she sent to the Parents on February 24, 2023, the District bureaucrat Amy Farthing says that the transfer of D.U. and [Mother] to another school was to

16

'avoid disruption to their education process that was foreseeable if they remained at Wolf Springs.'"

Citing *Taiwo*, Appellants assert that these statements allege that Appellees' conduct was extreme and outrageous, so they should have been granted discovery on this claim. In *Taiwo*, our Supreme Court found the alleged tortious conduct was extreme and outrageous and affirmed a jury verdict in favor of Sherry and Obafemi Taiwo on their claim of intentional infliction of emotional distress. Sherry worked for Kim Phan Thi Vu at a daycare center. After her employment ended, Sherry got into an argument with Vu about her final paycheck. During the argument, Vu shoved Sherry in the chest and then locked her inside the daycare center. Vu subsequently made repeated false accusations to police about Sherry and Obafemi, accusing them of vandalism and battery. She also filed a false police report and induced another employee to lie to the police about the Taiwos' involvement in the alleged vandalism. 249 Kan. at 587-89, 593.

Our Supreme Court found Vu's conduct "intentional and malicious" and distinguished other similar cases, explaining:

> "Vu's liability did not arise from mere insults, indignities, threats, annoyances, petty expressions, or other trivialities. This was not a matter of the Taiwos' feelings merely being hurt. Ms. Vu's conduct cannot be explained as simply expressing her opinion or the result of a mistaken belief. She abused the criminal justice process to her own ends. Even when the police gave her the opportunity to correct her story, she refused. Reasonable people could regard her behavior as atrocious and utterly intolerable in a civilized society. If reasonable people do not agree on whether Ms. Vu's behavior was outrageous, then the question should be submitted to the jury." 249 Kan. at 593.

The *Taiwo* court held that Vu's conduct could reasonably be regarded as so extreme and outrageous as to permit recovery, so the district court had properly submitted the claim to the jury. 249 Kan. at 593.

17

Yet the facts here are not so similar to *Taiwo* to persuade us that Appellants should have been allowed to proceed on this claim. True, somewhat like *Taiwo*, Appellants alleged that Appellees reported D.U. to the police and school officials based on false or unsubstantiated rumors. They also claim they witnessed their young child undergo a criminal investigation and endured its related effects, including D.U. and Mother's transfers to another school. But unlike *Taiwo*, Appellants' allegations fall short of alleging any intentional abuse of the criminal justice system similar to the abuse shown by Vu. And even if the amended petition could be reasonably read as alleging such an abuse, Appellants still do not claim that Appellees reported them to the police. Appellants' case is thus unlike *Taiwo* in important respects.

And Appellants' assertions regarding Appellees' social media posts also fail to allege extreme and outrageous conduct. Again, extreme and outrageous conduct does not arise from "'mere insults, indignities, threats, annoyances, petty expressions, or other trivialities.'" *Bradshaw*, 1 Kan. App. 2d at 216. Our society expects citizens to be thicker-skinned. See *Fusaro*, 257 Kan. at 805.

The facts presented here do not meet this standard. As alleged in Appellants' amended petition, Appellees made social media posts blaming Appellants' parenting for unspecified behavior of D.U. Even assuming that the behavior D.U. was accused of was egregious, an average citizen would not spontaneously exclaim, "Outrageous!" upon learning about Appellees' online statements. *Bradshaw*, 1 Kan. App. 2d at 216. Appellees' conduct could easily be explained as simply expressing their opinion or the result of a mistaken belief. Cf. *Hanrahan v. Horn*, 232 Kan. 531, 657 P.2d 561 (1983). Thus their conduct was not sufficiently extreme and outrageous to show intentional infliction of emotional distress.

*No Severe Emotional Distress*

Appellants also fail to allege facts showing they suffered severe emotional distress. Liability arises only when the plaintiff's distress is so severe that no reasonable person should be expected to endure it. *Taiwo*, 249 Kan. at 594 (citing Restatement [Second] of Torts § 46[1], comments j and k [1963]). "Elevated fright, continuing concern, embarrassment, worry, and nervousness do not by themselves constitute sufficient harm to a plaintiff to warrant the award of damages for outrage." *Valadez*, 290 Kan. at 478.

But physical symptoms or mental symptoms that are long lasting and debilitating may meet that standard.

> "'There is no laundry list of what qualifies as the requisite level of severity [of emotional distress] . . . . [I]t is fair to say that headaches, sleeplessness, irritability, anxiety, depression, listlessness, lethargy, intermittent nightmares, and the like would probably not suffice anywhere.
>
> "'On the other hand, physical symptoms probably would suffice, and if purely mental symptoms are all that apply . . . those symptoms should at least be long lasting and debilitating.'" *Valadez*, 290 Kan. at 479 (quoting Boston, Kline & Brown, Emotional Injuries: Law and Practice § 22:7 [1998]).

Our Supreme Court has found the absence of psychiatric or medical treatment, including medication, weighs against a finding of extreme emotional distress. 290 Kan. at 479. It concluded in *Valadez* that even though newscasters had publicly falsely accused Valadez of being the BTK serial murderer, the evidence did not show Valadez had suffered severe or extreme emotional distress beyond what he experienced because of the defendants' constitutionally protected activities. He testified that when he watched the false publicity about himself, he felt like he had been hit in the gut and became physically ill, and that he could not return home due to unwanted attention. But he had not shown

19

that he sought medical treatment or psychological counseling or that he had any long-lasting mental effects from the accusations. See 290 Kan. at 473-74, 478. Valadez thus failed to prove that he suffered extreme or severe emotional distress because of the news coverage of his arrest and thus could not sustain an action for outrage. See also *Roberts*, 230 Kan. at 296 (no outrage shown where plaintiff's emotional distress was not so severe that plaintiff had to seek psychiatric or further medical treatment); *Dana v. Heartland Management Co.*, 48 Kan. App. 2d 1048, 1060, 301 P.3d 772 (2013) (Plaintiffs failed to prove extreme or severe emotional distress when there was no evidence that plaintiffs sought medical or psychological treatment as a result of defendants' conduct.).

With that legal framework established by the cases above, which were decided by the facts on summary judgment or at trial, we turn to whether Appellants' petition stated the required severe emotional distress. In identifying their damages stemming from Appellees' actions, Appellants claimed that they "experienced embarrassment and severe emotional distress" based on the following:

- "Singleton announced on social media that the student who was accused of having a murder list was their son."
- "Singleton and some other Defendants blamed their parenting, on social media, for D.U.'s alleged disorderly conduct."
- Mother "witnessed D.U. being treated like a threat at school on February 10, 2023[,] . . . [seeing his] seclusion and . . . being questioned about having a murder list[,] [and] . . . was told that a school resource officer was waiting outside to question . . . her naïve and innocent 8-year-old son."
- Appellants went "through a school investigation and a re-entry meeting that resulted in a forced transfer to another elementary school in the middle of the Spring semester."
- "[W]idespread rumors about Plaintiffs being horrible parents with horrible children, denied . . . [Mother] the opportunity to work in the community."

But "[c]onduct that rises to the level of tortious outrage must transcend a certain amount of criticism, rough language, and occasional acts and words that are inconsiderate and unkind. The law will not intervene where someone's feelings merely are hurt." *Valadez*, 290 Kan. at 477. Embarrassment alone is not sufficient harm. See 290 Kan. at 478. And Appellants provide no information about the severity of their distress. Cf. *Spencer v. Ziegler*, No. 126,848, 2024 WL 5102669, at *12 (Kan. App. 2024) (unpublished opinion) (finding the following testimony "not particularly strong" but sufficient to affirm the district court's decision to allow the tort of outrage claim to go to the jury: the acts caused him "'ill effects'" and "'physical problems'"; he went to the VA numerous times; he was prescribed medication for anxiety; and the acts had a "'big-time'" impact on his blood pressure).

Even claiming that one's reputation was destroyed by the defendant's conduct fails to allege the extreme emotional distress required to state a claim for outrage. See *Ellibee v. Biggs*, No. 104,368, 2011 WL 1878153, at *3 (Kan. App. 2011) (unpublished opinion) (finding court properly dismissed outrage claim for failure to allege extreme emotional distress when the petition claimed only that Ellibee's reputation was destroyed and damaged by the defendant's conduct). Appellants failed to meet the threshold requirements for stating a claim for intentional infliction of emotional distress. We thus affirm the district court's order dismissing this claim.

III.   DID THE DISTRICT COURT ERR BY DISMISSING APPELLANTS' CIVIL CONSPIRACY CLAIM?

Appellants next claim the district court did not apply the appropriate standard of review for deciding a motion to dismiss. As noted in the previous issue, Appellants contend that the district court did not view the facts pleaded in their amended petition in a light most favorable to them or assume those facts are true as K.S.A. 60-212(b)(6) requires. Appellants focus primarily on the district court's analysis of their civil

21

conspiracy claim but seemingly challenge each of the district court's rulings on this basis. Having found no error in the district court's analysis of Appellants' first two claims, we limit this analysis to Appellants' only remaining claim—civil conspiracy.

*Discussion*

Appellants contend that the district court applied a different standard of review than prescribed under K.S.A. 60-212(b)(6) because it adopted the opposite view of the facts than alleged in the amended petition. Appellants assert that the district court began its review of their conspiracy claim by incorrectly assuming their suit was in retaliation for Appellees' reporting.

But this assertion mischaracterizes the district court's findings and is unsupported by the record. This argument appears to misinterpret these preliminary findings that the district court made in its order dismissing Appellants' claims:

> "This case involves some alleged statements made by a student at [WSE]. The student who is alleged to have made the statements is the minor son of the Plaintiffs and he is alleged to have said that he had a 'murder list.' Plaintiffs have initiated this lawsuit against the Defendants *for their reaction and response* to the alleged statements made by their son, D.U." (Emphasis added.)

Although the district court's wording is somewhat confusing, the district court found Appellants brought these claims against Appellees based on "their reaction and response" to D.U.'s alleged statements, i.e., the Appellees' reaction and response. The district court did not find that Appellants filed this lawsuit based on "their" own reactions and responses. And the district court used no other language supporting the alleged "retaliation" theory. Appellants do not point out any other specific instances in which they believe the district court applied an improper legal standard to decide their claims.

22

Having clarified the district court's initial findings, we review the district court's ruling on Appellants' conspiracy claim. The elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153 (1984). Civil conspiracy is an actionable tort. But a claim for civil conspiracy requires the commission of some wrong giving rise to a cause of action independent of the conspiracy. In other words, to prove the conspiracy, the plaintiff must also show an underlying tort was committed. See 234 Kan. at 967; *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, 476, 620 P.2d 837 (1980).

Appellants accused Appellees of committing two other torts: false light invasion of privacy and intentional infliction of emotional distress. But as discussed above, the district court properly dismissed those claims based on Appellants' lack of standing and insufficient pleading. And Appellants did not argue any separate, actionable tort, so they cannot prove a civil conspiracy under these facts. See *Stoldt*, 234 Kan. at 967; *Knight*, 5 Kan. App. 2d at 476.

The district court thus correctly determined that because Appellants' first two claims failed, their conspiracy claim necessarily failed. Dismissal was thus appropriately granted. Cf. *Jarvis v. Nationwide Ins. Co. of Am.*, No. 120,332, 2019 WL 4725239, at *6-7 (Kan. App. 2019) (unpublished opinion) (affirming dismissal of civil conspiracy claim when petitioner could not show damages).

IV.   DID THE DISTRICT COURT ERR BY DENYING APPELLANTS' MOTION FOR A CHANGE OF VENUE?

Appellants' final issue alleges judicial bias, challenging Johnson County District Judge Rhonda Mason's impartiality. Judge Mason presided over these proceedings and another case involving Appellants, which they refer to as a companion case. Appellants

23

assert that throughout both cases, Judge Mason consistently ruled against them, denying their many requests for discovery and preventing them from serving subpoenas. Yet she regularly ruled in favor of the opposing parties' motions, including Appellees' motion to dismiss their claims.

Appellants separately argue that Judge Mason erred by denying their request for a change of venue. In that motion, Appellants argued two other Johnson County district judges exhibited bias against them. As relief for these alleged errors and allegedly biased rulings, Appellants ask this court to reverse the district court's order dismissing their amended petition and remand these matters with direction to transfer venue to a different county.

*Claim of Bias*

*Preservation*

A litigant may argue that a judge's recusal is required in accordance with (1) the statutory factors set forth in K.S.A. 20-311d(c); (2) the standards of the Kansas Code of Judicial Conduct, Supreme Court Rule 601B, Canon 2, Rule 2.2 (2026 Kan. S. Ct. R. at 489); and (3) the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State v. Moyer*, 306 Kan. 342, 370, 410 P.3d 71 (2017). But Appellants did not raise such a claim in the district court, and they cite none of these authorities to support such a claim. The argument is thus unpreserved and improperly briefed. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018) (failure to support a point with pertinent authority is like failing to brief the issue); *In re N.E.*, 316 Kan. 391, 407, 516 P.3d 586 (2022) (an issue not raised before the district court cannot be raised on appeal).

We recognize that Appellants' argument falls somewhat in line with K.S.A. 20-311d, which allows a party to move for a change of judge based on the belief "that the judge to whom an action is assigned cannot afford that party a fair trial in the action." K.S.A. 20-311d(a). Under this provision though, "a party must first file a motion for change of judge; if that motion is denied, then the party must immediately file a legally sufficient affidavit alleging grounds set forth in the statute." *State v. Sawyer*, 297 Kan. 902, 908, 305 P.3d 608 (2013). Appellants did neither, so we decline to exercise appellate review of this claim. See *In re Marriage of Bush*, 62 Kan. App. 2d 284, 291-92, 513 P.3d 494 (2022) (declining to consider bias claim on appeal when claimant failed to follow the proper statutory procedure).

Appellants did not raise their judicial bias argument about Judge Mason in the district court and, even if they had, they cite no legal authority for the claim. We thus dismiss this claim of error.

*Denial of Motion for Change of Venue*

Appellants summarily challenge the district court's denial of their motion for a change of venue under K.S.A. 60-609(b). We review a court's decision to change venue under K.S.A. 60-609 for an abuse of discretion. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 462, 509 P.3d 1211 (2022). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024).

*No Error in Denial of Motion to Change Venue*

Appellants raised three arguments in support of their motion for a change of venue under K.S.A. 60-609(b). First, Appellants alleged that another Johnson County district court judge, Joann Woltman, was named as a "primary [d]efendant in this case."

Appellants explained that Woltman had children who attended WSE and suggested that other Johnson County judges may have already heard about the underlying matters, "from the Defendants' perspective." Second, Appellants alleged that the Blue Valley School District had "immense influence and prestige in Johnson County" and could thus influence judicial employees and prospective jurors. Third, Appellants alleged that yet another Johnson County district magistrate judge, Jenifer Ashford, displayed a "great deal of prejudice" while presiding over D.U.'s truancy case.

The district court denied each argument, correctly finding Judge Woltman was not a named defendant and judicial bias was not a valid reason to change venue under K.S.A. 60-609(b). The district court also declined Appellants' implied invitation to rule on the merits of their judicial bias arguments. The court instead found that Appellants failed to follow the proper procedure under K.S.A. 20-311d for requesting a change of judge and alleged insufficient facts to show bias.

K.S.A. 60-609(b) specifically excludes the disqualification of a judge as a reason for a change of venue:

> "In any action in the district court . . . in which it shall be made to appear that a fair and impartial trial cannot be had in the county where the action is pending, *for reasons other than the disqualification of the judge*, the court, upon application of either party, may change the place of trial to some county where the objection does not exist." (Emphasis added.)

So Appellants could not raise judicial bias by filing the type of motion they filed.

The district court correctly determined that Appellants' arguments purportedly made in support of a change of venue alleged judicial bias throughout Johnson County. Appellants could have sought Judge Mason's recusal by filing a motion under K.S.A. 20-311d but elected to move for a change of venue under K.S.A. 60-609(b). Yet that

provision specifically excludes judicial disqualification as grounds for granting relief. So the district court correctly rejected these arguments and denied Appellants' motion for a change of venue.

Affirmed in part and dismissed in part.